No. 21-13104 (No. 21-13444)

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

STATE OF ALABAMA, *et al.*,
*Appellants*,

v.

UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*,
*Appellees.*

On Appeal from the United States District Court
for the Northern District of Georgia, Case No. 1:18-MI-00043-TWT

---

# BRIEF OF *AMICUS CURIAE* SENATOR DANIEL ROBERT ("BOB") GRAHAM IN SUPPORT OF APPELLANTS AND REVERSAL OF THE DISTRICT COURT'S DECISION

---

MICHAEL ROBINSON-DORN
(Pro Hac Vice Pending)
University of California, Irvine School of Law
Environmental Law Clinic
P.O. Box 5479 Irvine, CA 92616-5479
(949) 824-6688 | Phone
mrobinson-dorn@law.uci.edu

JON L. MILLS

Boies Schiller Flexner, LLP
100 SE Second St, Suite 2800
Miami, FL 33131
(305) 357-8449 | Phone
jmills@bsfllp.com

*Counsel for Amicus Curiae**

*Law students Emily Risdon and Michael Vine (U.C. Irvine) contributed significantly to the drafting of this brief.

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

1. Ackerman, Georgia (Standing Declarant)
2. Allen, John C. (Attorney for Appellee / Intervenor State of Georgia)
3. Allen, Kenneth W. (Attorney for Appellee / Intervenor State of Georgia)
4. Andre, Abigail (Attorney for Amici Curiae in the District Court Calhoun County, Fla., Franklin County, Fla., Liberty County, Fla., Jackson County, Fla., Florida Coastal Conservation Association, Trip Aukeman, Albert Bryant, Shannon Hartsfield, Lynn Martina, Kevin Martina, Carmen McLemore, Daniel Taunton, Richard Bickel, Thomas Ward, and City of Apalachicola, Fla.)
5. Apalachee Audubon Society (Amicus Curiae in the District Court)
6. Apalachicola Bay and River Keeper (Appellant)
7. Atlanta Regional Commission (Appellee / Intervenor)
8. Aukeman, Trip (Amicus Curiae in the District Court)
9. Balthrop, Mary (Standing Declarant)

10. Bickel, Richard (Amicus Curiae in the District Court)
11. Boies Schiller Flexner LLP (Attorneys for Amici Curiae in the District Court Robert Graham and Gwendolyn Graham)
12. Brock, Virginia (Standing Declarant)
13. Bryant, Albert (Amicus Curiae in the District Court)
14. Calhoun County, Fla. (Amicus Curiae in the District Court)
15. Carr, Christopher M. (Attorney for Appellee / Intervenor State of Georgia)
16. Chapman, Jeremy J. (District Commander for Mobile District of the U.S. Army Corps of Engineers)
17. City of Apalachicola, Fla. (Amicus Curiae in the District Court)
18. City of Atlanta, Ga. (Appellee / Intervenor)
19. City of Gainesville, Ga. (Appellee / Intervenor)
20. Cobb-County Marietta Water Authority (Appellee / Intervenor)
21. Coe, Alisa (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)
22. DeKalb County, Ga. (Appellee / Intervenor)
23. DeLapp, James A. (Appellee)

24. Drumm, Starr T. (Attorney for Appellant State of Alabama)
25. Dycus, John P. (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)
26. Earthjustice (Attorneys for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)
27. Ellerhorst, Shelly J. (Attorney for Appellee / Intervenor State of Georgia)
28. Fellows LaBriola, LLP (Attorneys for Appellant State of Alabama)
29. Florida Coastal Conservation Association (Amicus Curiae in the District Court)
30. Florida Wildlife Federation (Appellant)
31. Forsyth County, Ga. (Appellee / Intervenor)
32. Fortuna, John L. (Attorney for Appellees / Intervenors Atlanta Regional Commission, Cobb County-Marietta Water Authority, DeKalb County, Ga., Forsyth County, Ga., Fulton County, Ga., Gwinnett County, Ga., City of Atlanta, Ga., and City of Gainesville, Ga.)

33. Franklin County, Fla. (Amicus Curiae in the District Court)

34. Fuller, Manley (Standing Declarant)

35. Fulton County, Ga. (Appellee / Intervenor)

36. Galloni, Tania (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

37. Gormley, Neil E. (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

38. Graham, Gwendolyn (Amicus Curiae in the District Court)

39. Graham, Robert (Amicus Curiae in the District Court)

40. Gray, Michael T. (Attorney for Federal Appellees)

41. Gretchen, Michael C. (Attorney for Appellant State of Alabama)

42. Gwinnett County, Ga. (Appellee / Intervenor)

43. Hartsfield, Shannon (Amicus Curiae in the District Court)

44. Hill, Brandt P. (Attorney for Appellant State of Alabama)

45. Hood, Laurie (Standing Declarant)

46. Jackson County, Fla. (Amicus Curiae in the District Court)

47. Jay, Andrew (Standing Declarant)

48. Jon L. Schwartz, Attorney at Law, P.C. (Attorneys for Amici Curiae in the District Court Robert Graham and Gwendolyn Graham)

49. Jones, Lewis B. (Attorney for Appellees / Intervenors Atlanta Regional Commission, Cobb County-Marietta Water Authority, DeKalb County, Ga., Forsyth County, Ga., Fulton County, Ga., Gwinnett County, Ga., City of Atlanta, Ga., and City of Gainesville, Ga.)

50. Kazmarek Mowrey Cloud Laseter LLP (Attorneys for Appellee / Intervenor State of Georgia)

51. Kelley, Jason E. (Division Commander for the South Atlantic Division of the U.S. Army Corps of Engineers)

52. Kim, Todd (Assistant Attorney General and Attorney for Federal Appellees)

53. King & Spalding LLP (Attorneys for Appellees / Intervenors Atlanta Regional Commission, Cobb County-Marietta Water Authority, DeKalb County, Ga., Forsyth County, Ga., Fulton County, Ga., Gwinnett County, Ga., City of Atlanta, Ga., and City of Gainesville, Ga.)

54. Kirkland & Ellis LLP (Attorneys for Appellee / Intervenor State of Georgia)

55. Korte, Brett (Attorney for Amicus Curiae in the District Court Robert Graham and Gwendolyn Graham)

56. LaBriola, Stephen T. (Attorney for Appellant State of Alabama)

57. LaCour, Jr., Edmund G. (Attorney for Appellant State of Alabama)

58. Lamont, Douglas (Appellee)

59. Law Office of Barbara Sanders (Attorney for Amici Curiae in the District Court St. George Island Civic Club, Inc., and St. George Plantation Owners' Association, Inc.)

60. Liberty County, Fla. (Amicus Curiae in the District Court)

61. Luebkemann, Jordan (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

62. Malloy, Bonnie (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

63. Marshall, Steven (Attorney for Appellant State of Alabama)

64. Martina, Kevin (Amicus Curiae in the District Court)

65. Martina, Lynn (Amicus Curiae in the District Court)

66. Maynard, Cooper & Gale, P.C. (Attorneys for Appellant State of Alabama)

67. McLemore, Carmen (Amicus Curiae in the District Court)

68. Mills, Jon (Attorney for Amici Curiae in the District Court Robert Graham and Gwendolyn Graham)

69. National Wildlife Federation (Appellant)

70. Neiman, Jr., John C. (Attorney for Appellant State of Alabama)

71. Ocean Conservancy (Amicus Curiae in the District Court)

72. Patton Dycus Law, LLC (Attorneys for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

73. Pinkham, Jaime A. (Acting Assistant Secretary of the U.S. Army for Civil Works)

74. Primis, Craig S. (Attorney for Appellee / Intervenor State of Georgia)

75. Reichert, Christina I. (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

76. Roady, Stephen E. (Attorney for Amici Curiae in the District Court Apalachee Audubon Society and Ocean Conservancy)

77. Rodriguez, Gonzalo E. (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

78. Robertson, Preston (Standing Declarant)

79. Robinson, Clay (Standing Declarant)

80. Robinson-Dorn, Michael (Attorney for Amicus Curiae in the District Court Robert Graham and Gwendolyn Graham)

81. Samet, Melissa (Standing Declarant)

82. Sanders, Barbara (Attorney for Amici Curiae in the District Court St. George Island Civic Club, Inc., and St. George Plantation Owners' Association, Inc.)

83. Schwartz, Jonathan L. (Attorney for Amicus Curiae in the District Court Robert Graham and Gwendolyn Graham)

84. Schifman, Reuben S. (Attorney for Appellee Federal Defendants)

85. Semonite, Todd T. (Appellee)
86. Speer, Robert M. (Appellee)
87. Spellmon, Scott A. (Commander and Chief of Engineers of the U.S. Army Corps of Engineers)
88. St. George Island Civic Club, Inc. (Amicus Curiae in the District Court)
89. St. George Plantation Owners' Association, Inc. (Amicus Curiae in the District Court)
90. Stack & Associates, P.C. (Attorneys for Amici Curiae in the District Court Apalachee Audubon Society, Ocean Conservancy, St. George Island Civic Club, Inc., and St. George Plantation Owners' Association, Inc.)
91. Stack, Donald J. (Attorney for Amici Curiae in the District Court Apalachee Audubon Society, Ocean Conservancy, St. George Island Civic Club, Inc., and St. George Plantation Owners' Association, Inc.)
92. State of Alabama (Appellant)
93. State of Georgia (Appellee / Intervenor)

94. Sturm, Kimberly A. (Attorney for Amici Curiae in the District Court Calhoun County, Fla., Franklin County, Fla., Liberty County, Fla., Jackson County, Fla., Florida Coastal Conservation Association, Trip Aukeman, Albert Bryant, Shannon Hartsfield, Lynn Martina, Kevin Martina, Carmen McLemore, Daniel Taunton, Richard Bickel, Thomas Ward, and City of Apalachicola, Fla.)

95. Taunton, Daniel (Amicus Curiae in the District Court)

96. Thrash Jr, Thomas W. (U.S. District Judge for the Northern District of Georgia)

97. Tonsmeire, Dan (Standing Declarant)

98. Turner, David C. (Appellee)

99. University of California Irvine Environmental Law Clinic (Attorneys for Amici Curiae in the District Court Robert Graham and Gwendolyn Graham)

100. U.S. Army Corps of Engineers (Appellee)

101. U.S. Department of Justice, Environmental and Natural Resources Division (Attorneys for Federal Appellees)

102. Vermont Law School Environmental Advocacy Clinic (Attorneys for Amici Curiae in the District Court Calhoun County, Fla., Franklin County, Fla., Liberty County, Fla., Jackson County, Fla., Florida Coastal Conservation Association, Trip Aukeman, Albert Bryant, Shannon Hartsfield, Lynn Martina, Kevin Martina, Carmen McLemore, Daniel Taunton, Richard Bickel, Thomas Ward, and City of Apalachicola, Fla.)
103. Waldbeser, Drew F. (Attorney for Appellee / Intervenor State of Georgia)
104. Ward, Thomas (Amicus Curiae in the District Court)
105. Weissman, P.C. (Attorneys for Amici Curiae in the District Court Calhoun County, Fla., Franklin County, Fla., Liberty County, Fla., Jackson County, Fla., Florida Coastal Conservation Association, Trip Aukeman, Albert Bryant, Shannon Hartsfield, Lynn Martina, Kevin Martina, Carmen McLemore, Daniel Taunton, Richard Bickel, Thomas Ward, and City of Apalachicola, Fla.)
106. Williams, Jean E. (Attorney for Federal Appellees)
107. Wormuth, Christine (Secretary of the United States Army)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and Eleventh Circuit Rule 26.1-1, *Amicus* Daniel Robert Graham affirms that there are no parent or publicly held corporations pertinent to him such as to require disclosure.

/s/ Jon L. Mills
JON L. MILLS

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.................................... C-1

CORPORATE DISCLOSURE STATEMENT.................................... C-12

TABLE OF CONTENTS........................................................................ i

TABLE OF CITATIONS...................................................................... iii

INTERESTS OF AMICUS CURIAE........................................................ 1

INTRODUCTION................................................................................. 2

SUMMARY OF ARGUMENT.................................................................. 6

ARGUMENT......................................................................................... 9

I. The Impact of the Corps' Activity on the Apalachicola Ecosystem is Not Negligible.................. 9

a. Timely pulses of fresh water from the Apalachicola River are critical for cultivating sufficient habitat conditions for biotic species............................................. 10

b. Existing conditions are likely to be exacerbated by climate change................................................................ 17

II. The Corps' Management of the ACF System Dictates Apalachicola River Flow, and the Effects of the Corps' Current Management Have Not Been Adequately Described for Decisionmakers and the Public, in Violation of NEPA................................................................ 20

a. The Corps violated NEPA by using an improper baseline, insufficiently analyzing impacts on fish and wildlife, and failing to analyze its operations in respect to expected climate change effects.................. 22

b. The Corps was made aware of the deficiencies in its methods and still failed to address those deficiencies.... 25

CONCLUSION......................................................................................... 31

CERTIFICATE OF COMPLIANCE....................................................... 34

CERTIFICATE OF SERVICE................................................................ 35

## TABLE OF CITATIONS

### CASES

*Burlington Truck Lines Inc. v. United States*,
83 S. Ct. 156 (1962)........................................................................ 27

*Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*,
538 F.3d 1172 (9th Cir. 2008)......................................................... 25

*Env't Def. v. U.S. Army Corps of Eng'rs*,
515 F. Supp. 2d 69 (D.D.C. 2007).................................................. 26

*Grand Canyon Trust v. F.A.A.*,
290 F.3d 339 (D.C. Cir. 2002)......................................................... 22

In re *Tri-State Water Rts. Litig.*,
2010 WL 11586590 (M.D. Fla. July 12, 2010)........................... 3, 26

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins.*,
463 U.S. 26 (1983)........................................................................... 27

*Nat'l Parks Conservation Ass'n v. Semonite*,
925 F.3d 500 (D.C. Cir. 2019)......................................................... 26

*Nat'l Wildlife Fed'n, Inc. v. U.S. Army Corps of Eng'rs*,
312 F. Supp. 3d 167 (D.D.C. 2018)................................................ 10

*Sierra Club v. U.S. Army Corps of Eng'rs*,
701 F.2d 1011 (2d Cir. 1983)........................................................... 27

*Sierra Club v. U.S. Army Corps of Eng'rs*,
803 F.3d 31 (D.C. Cir. 2015)............................................................ 8

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
440 F. Supp. 3d 1 (D.D.C. 2020).................................................... 26

*Van Abbema v. Fornell*,
807 F.2d 663 (7th Cir. 1986)........................................ 26, 27

*WildEarth Guardians v. U.S. Bureau of Land Mgmt.*,
870 F.3d 1222 (10th Cir. 2017)........................................ 25

*WildEarth Guardians v. Zinke*,
368 F. Supp. 3d 41 (D.D.C. 2019)........................................ 24

**STATUTES AND REGULATIONS**

* Administrative Procedure Act ("APA"),
5 U.S.C. §§ 500–596........................................ 5

5 U.S.C. § 706(2)(A)........................................ 27

* National Environmental Policy Act ("NEPA"),
42 U.S.C. §§ 4321–4370m........................................ 4

40 C.F.R. § 1502.1........................................ 22

40 C.F.R. § 1508.7........................................ 22

40 C.F.R. § 1508.25........................................ 22

**OTHER AUTHORITIES**

Clyde Butcher, *Apalachicola River— An American Treasure*,
Window of the Eye, Inc. (2006)........................................ 2, 3, 20, 31, 32

* U.S. Army Corps of Eng'rs, *Final Environmental Impact Statement for the Update of the Water Control Manual for the Apalachicola-Chattahoochee-Flint River Basin*, (Dec.2016)
https://www.sam.usace.army.mil/Missions/Planning-Environmental/ACF-Master-Water-Control-Manual-Update/ACF-Document-Library/ ........ passim

Wolfgang J. Junk et al., *The Flood Pulse Concept in River-Floodplain Systems*,
Canadian Special Publ'n of Fisheries & Aquatic Scis. 106 (1989),
https://www.researchgate.net/publication/256981220_The_Flood_Pulse_Concept_in_River-Floodplain_Systems ........ 11

* Robert J. Livingston, *Importance of River Flow to the Apalachicola River-Bay System*,
Rep. to the Fla. Dep't of Env't Prot. (2008),
http://mayorvanjohnson.com/files/Livingston_Report.pdf ........ 11, 12, 13, 14

Steven L. Morey & Dmitry S. Dukhovskoy, *Analysis Methods for Characterizing Salinity Variability from Multivariate Time Series Applied to the Apalachicola Bay Estuary*,
29 J. of Atmospheric & Oceanic Tech. 613 (2012),
https://doi.org/10.1175/JTECH-D-11-00136.1 ........ 12

Robert J. Livingston et al., *Modelling Oyster Population Response to Variation in Freshwater Input*,
50 Estuarine, Coastal, & Shelf Sci. 655 (2000),
https://doi.org/10.1006/ecss.1999.0597 ........ 13

Wenrui Huang et al., *Remote Sensing for Water Quality Monitoring in Apalachicola Bay, USA*,
Advances in Earth Observation of Glob. Change 69 (2010), https://doi.org/10.1007/978-90-481-9085-0_6. ................................ 13

Edward V. Camp et al., *Collapse of a Historic Oyster Fishery: Diagnosing Causes and Identifying Paths Toward Increased Resilience*,
20 Ecology & Soc'y (Sept. 2015), https://www.jstor.org/stable/26270266.......................................... 13

Dara H. Wilber, *Associations Between Freshwater Inflows and Oyster Productivity in Apalachicola Bay, Florida*,
35 Estuarine, Coastal, & Shelf Sci. 179 (1992), https://doi.org/10.1016/S0272-7714(05)80112-X. .......................... 13

Florida Fish and Wildlife Conservation Commission, *FWC Approves Measures to Support Recovery and Restoration of Oysters in Apalachicola Bay*,
(Dec. 16, 2020), https://myfwc.com/news/all-news/oyster-commission-1220/..........14

Johnathan H. Grabowski et al., *Economic Valuation of Ecosystem Services Provided by Oyster Reefs*,
62 Bioscience 900 (2012), https://doi.org/10.1525/bio.2012.62.10.10..................................... 15

Alejandro Yáñez-Arancibia & John W. Day, *Environmental Sub-Regions in the Gulf of Mexico Coastal Zone: The Ecosystem Approach as an Integrated Management Tool*,
47 Ocean & Coastal Mgmt. 727 (2004), https://doi.org/10.1016/j.ocecoaman.2004.12.010......................... 15

Michael Santema et al., *Water Column Oxygen Dynamics*

*Within the Coastal Gradient in the Northeastern Gulf of Mexico Inner Shelf*,
104 Cont'l Shelf Rsch. 104 (2015),
https://doi.org/10.1016/j.csr.2015.05.006 ........................................ 15

Behzad Mortazavi et al., *Nitrogen Budget of Apalachicola Bay, a Bar-Built Estuary in the Northeastern Gulf of Mexico*,
195 Marine Ecology Progress Series 1 (2000),
http://dx.doi.org/10.3354/meps195001 ........................................... 16

Felicia C. Coleman & Christopher C. Koenig, *The Effects of Fishing, Climate Change, and Other Anthropogenic Disturbances on Red Grouper and Other Reef Fishes in the Gulf of Mexico*,
50 Integrative & Comparative Biology 201 (2010),
https://doi.org/10.1093/icb/icq072 .................................................. 16

Jared H. Flowers et al., *Spawning Site Selection and Potential Implications of Modified Flow Regimes on Variability of Gulf Sturgeon Populations*,
138 Transactions of the Am. Fisheries Soc'y 1266 (2009),
https://doi.org/10.1577/T08-144.1 .................................................. 17

Melanie R. Darst & Helen M. Light, *Drier Forest Composition Associated with Hydrologic Change in the Apalachicola River Floodplain, Florida*,
U.S. Geological Surv. (2008),
https://doi.org/10.3133/sir20085062 ............................................... 17

Ram P. Neupane et al., *Hydrologic Responses to Projected Climate Change in Ecologically Diverse Watersheds of the Gulf Coast, United States*,
Int'l J. of Climatology 2227 (2018),
https://doi.org/10.1002/joc.5947 ..................................................... 17

Aavudai Anandhi et al., *Hydrologic Characteristics of Streamflow in the Southeast Atlantic and Gulf Coast Hydrologic Region during 1939–2–16 and Conceptual Map of Potential Impacts*,
42 Hydrology (Sept. 2018),
https://doi.org/10.3390/hydrology5030042 .................................... 17

Morris A. Bender et al., *Modeled Impact of Anthropogenic Warming on the Frequency of Intense Atlantic Hurricanes*,
327 Sci. 454 (2010),
https://doi.org/10.1126/science.1180568 ........................................ 17

Dingbao Wang et al., *Climate Chang Impact and Uncertainty Analysis of Extreme Rainfall Events in the Apalachicola River Basin, Florida*,
48 J. of Hydrology 125 (2013),
https://doi.org/10.1016/j.jhydrol.2012.12.015 ................................ 18

E. Robert Thieler & Erika S. Hammar–Klose, *National Assessment of Coastal Vulnerability to Future Sea-Level Rise: Preliminary Results for the U.S. Gulf of Mexico Coast*,
U.S. Geological Survey (2000),
https://pubs.usgs.gov/of/2000/of00-179/ ........................................ 18

Laura L. Geselbracht et al., *Modeled Sea Level Rise Impacts on Coastal Ecosystems at Six Major Estuaries on Florida's Gulf Coast: Implications for Adaptation Planning*,
PLOS ONE (July 2015),
https://doi.org/10.1371/journal.pone.0132079 ............................... 19

John W. Day et al., *Consequences of Climate Change on the Ecogeomorphology of Coastal Wetlands*,

31 Estuaries & Coasts 477 (2008),
http://dx.doi.org/10.1007/s12237-008-9047-6 ................................ 19

Richard J. Blaustein, *Biodiversity Hotspot: The Florida Panhandle*,
50 BioScience 784 (2008),
https://doi.org/10.1641/B580904 .................................................... 24

Battelle Memorial Institute, *Final Independent External Peer Review Report: Apalachicola-Chattahoochee-Flint River Water Control Manual, Environmental Impact Statement, and Water Supply Storage Assessment Report*,
Prepared for the U.S. Army Corps of Eng'rs (Sept. 2015),
https://usace.contentdm.oclc.org/digital/collection/p16021coll7/id/4362/ ........................................................................ 29

## INTEREST OF AMICUS

*Amicus* Daniel Robert ("Bob") Graham's Florida public life spans 50 years, beginning in 1966 in the state legislature, and continuing to include serving as Governor of Florida (1979-1987) and Florida's U.S. Senator (1987-2005). His particular concern for the Apalachicola River began as Governor, when he became aware of the region's environmental degradation caused by the Army Corps of Engineers. In 1985, then-Governor Graham appointed a task force that designated the region as an Area of Critical State Concern. As Governor, he also established the Save Our Rivers Program and the Conservation and Recreation Lands Program, buying hundreds of thousands of acres of land for the protection of water quality, wildlife habitat, and ecosystem conservation and preservation. In the Apalachicola system alone, over 250 million dollars have been spent under these programs to protect the health and ecological functioning of the River, Floodplain and Bay. As a U.S. Senator, he met with the Corps many times to attempt to convey the importance of the Apalachicola River's vitality and the consequences of failing to protect and preserve the region. In short, Senator Graham's legacy of maintaining and protecting Florida's

incomparable environmental resources for its citizens is unparalleled. Senator Graham respectfully asks the Court to require the Army Corps of Engineers to comply with NEPA and acknowledge its historic and ongoing role in the ongoing degradation of the Apalachicola ecosystem.[1]

## INTRODUCTION


[2]

[1] No Party's counsel authored this brief in whole or in part. No person, other than amicus curiae's counsel, funded the preparation or submission of this brief. All parties have consented to the filing of this brief.

[2] Clyde Butcher, *Cypress Creek 2* (photograph), *in* APALACHICOLA RIVER—AN AMERICAN TREASURE (2006), p.32 (included with Mr. Butcher's Permission).

> *For its scale, diversity and history, the Apalachicola has persisted as one of America's least known great rivers. Under this shadow of anonymity, the Apalachicola has been under appreciated and subject to decades of man-inflicted scars . . . The one hundred miles of the Apalachicola, fed by the longer and better known Chattahoochee and Flint Rivers, are a leisurely float through what much of America used to be . . . The flat agricultural and forested lands of the river's midsection display the cypress trees in the foreground and the long leaf pine on the horizon, the very ecology viewed by the earliest Floridians. Sadly, it is here that over sixty years of attempting to maintain a barge canal through the spinal cord of the river has left ugly gashes and the ultimate indignity to this handsome river, a mountainous deposit of sand pile sediment lining the river bank. The final thirty miles of the river is a delta of innumerable serpentine tributaries and wetland beauty. At the terminus is the gulf port town of Apalachicola, home to some of America's most fascinating history and personalities, and the world class oysters of Apalachicola Bay.*
>
> *–Senator Bob Graham, 2006.*[3]

> *The Court is troubled by the Corps' refusal to take responsibility for its utter failure to conduct any sort of environmental analysis whatsoever on the plan by which it has operated the ACF basin for more than 20 years.*[4]

The Honorable Daniel Robert ("Bob") Graham, a former Florida elected official with long-standing demonstrated interests in protecting

---

[3] CLYDE BUTCHER, APALACHICOLA RIVER—AN AMERICAN TREASURE (Introduction) (Window of the Eye, Inc. 2006).

[4] In re *Tri-State Water Rts. Litig.*, No. 07-MD-01, 2010 WL 11586590, at *9 (M.D. Fla. July 21, 2010).

the Apalachicola River ("River"), Apalachicola Bay ("Bay"), the West Florida Shelf of the Gulf of Mexico ("Gulf of Mexico or Gulf"), and its related and dependent ecosystems (collectively, the "Apalachicola ecosystem"), submits this *Amicus Curiae* brief in support of Appellants' Opening Brief.

Throughout the United States Army Corps of Engineers' ("Corps") development of its updated Apalachicola-Chattahoochee-Flint River Basin ("ACF Basin") Water Control Manual ("Manual"), stakeholders have consistently advocated for an adequate study of the Corps' impacts on the declining Apalachicola ecosystem. The viability of this extraordinary ecosystem depends on the flow of freshwater from the ACF Basin—in the right amount and at the right time. The Corps' manipulation of freshwater flow into the Apalachicola ecosystem has caused devastating ecological harm. The Corps' Final Environmental Impact Statement ("FEIS") fails to consider these harmful impacts of the Corps' past operations, which were never subject to NEPA review.[5] Instead, the Corps improperly used the current, degraded ecosystem

---

[5] *See* Appellants' Br. at 15; National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370m.

conditions to establish a baseline against which potential future harms were compared. The Corps did so despite being flooded by comments from stakeholders pointing out this and other errors in the Corps' draft environmental impact statement. The Corps also failed to study the impacts of its past, current, and future operations on the vast majority of wildlife and vegetative species in the region, and failed to adequately address the impacts of its operations on the Apalachicola Ecosystem that will be exacerbated by climate change. In sum, the Corps failed to adequately analyze, let alone take a hard look at, the harm that its operations have caused, and will continue to cause on the Apalachicola Ecosystem, in violation of NEPA and the Administrative Procedure Act ("APA").[6]

If the district court's decision is allowed to stand, the Corps' operations, exacerbated by the ongoing effects of climate change, will continue to disrupt the vital flow of fresh water to the Apalachicola ecosystem; the floodplain will further dry out; and animal and plant habitats will become even more fragmented. In the Apalachicola Bay and Gulf, increased salinity levels will threaten wildlife, and nutrient

[6] Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500–596.

cycles will be severely disrupted. And without an adequate environmental impact statement that analyzes the ecological effects of the Corps' past, current, and proposed operations, the full extent of the devastation remains unaddressed. Rather than serving to inform decisionmakers and the public about the effects of its operations before deciding to act, as NEPA and the APA require, the FEIS largely ignores the Corps' contributions to the ongoing devastation documented on the River, Bay, and Gulf.[7]

*Amicus* respectfully submits this brief to offer additional context regarding the importance of freshwater flow to the health of the Apalachicola ecosystem, environmental harms that have occurred and could occur since the Corps began its operations in the Region, and the Corps' failure to analyze the effects of its own flow-reducing operations on the Apalachicola ecosystem, even after other agencies, nonprofits, and affected individuals informed the Corps of its shortcomings.

## SUMMARY OF ARGUMENT

The Apalachicola River Ecosystem exists in a delicate balance achieved by timely and sufficient freshwater flow from the Apalachicola

[7] ACF-18_00054803, at ACF-18_00054920–24.

River. The Corps' past and current control of the River's freshwater flow has played a significant role in the region's ongoing ecological decline. Despite this fact, the Corps prepared and relied on an FEIS that included very little analysis of the Corps' impacts on the Apalachicola Ecosystem.

Most glaringly, the FEIS failed to adequately account for and reckon with the Corps' own role in causing ongoing harms to the Apalachicola ecosystem. The FEIS uses the existing degraded environmental conditions, which resulted significantly from the Corps' own operations, as a baseline against which new operational impacts were compared—despite the fact that the Corps' operations have never undergone a NEPA analysis. The Corps' Draft Environmental Impact Statement was met with hundreds of comments, many informing the Corps it would be improper to use the current conditions as a baseline.[8] The Corps responded to these comments with conclusory statements without pointing to supporting evidence.[9]

---

[8] U.S. Army Corps of Eng'rs, *Final Environmental Impact Statement for the Update of the Water Control Manual for the Apalachicola-Chattahoochee-Flint River Basin (Dec. 2016)* [hereinafter *FEIS*], App. C, C–648, C–704.

[9] *See, e.g.*, *FEIS* App. C, at C–322, C–647.

The FEIS also failed to analyze potential impacts on the vast majority of species that live in the Apalachicola ecosystem.[10] Specifically, the Corps studied impacts on only four species out of the thousands that depend on the health of the ecosystem to survive. Similarly, the FEIS failed to adequately address how Corps operations will exacerbate the harmful effects of climate change. These inadequacies resulted in an FEIS that offers little informational value to decisionmakers. The procedural and substantive deficiencies of the FEIS leave stakeholders and citizens, who have relied on the productivity of the Apalachicola Ecosystem for generations, with little understanding of the impact that the Corps' manipulation of flows has had, and will have, on the Apalachicola ecosystem.[11] The Corps must be held to account for the effects of its management of the ACF Basin. Consequently, the Court should remand the matter to the Corps with direction to properly analyze its operations' past, present, and future impacts on the ecological treasure that is the Apalachicola Ecosystem.

---

[10] *See* Appellants' Br. at 21–27.

[11] *Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31, 36–37 (D.C. Cir. 2015) (Stating that a purpose of NEPA is to ensure that the public is informed of a project's direct and indirect environmental impacts).

## ARGUMENT

### I. The Impact of the Corps' Activity on the Apalachicola Ecosystem is Not Negligible.

Throughout the FEIS, the Corps maintains that the Update's effects on the Apalachicola ecosystem downstream of the Jim Woodruff Dam will be "negligible" without offering sufficient environmental analysis to support its conclusion.[12] The Corps' conclusion rests on the false premise that its past and current operations have had negligible impacts on the Apalachicola River system, and the Update results in very few, if any, changes to current operations.[13] The Apalachicola ecosystem exists in a delicate balance: the River's ability to provide adequate freshwater flow to floodplain habitats and the Bay plays a vital role in the ecological health of the System, the livelihood and society of local citizens, and the commercial fishing industry in the Gulf. Ongoing ecological changes in floodplain fauna, along with the collapse of a keystone species in the Apalachicola Bay, clearly demonstrate that

[12] *See* Appellants' Br. at 21–22 (cataloging FEIS statements reciting that impacts would be negligible).

[13] For a discussion on the Corps' impacts that have not been analyzed in past NEPA documents or the FEIS, see Appellants' Br. at 21–27.

the Corps' past and current operations have had a significant adverse effect on the Apalachicola River Ecosystem.

**a. Timely pulses of fresh water from the Apalachicola River are critical for cultivating sufficient habitat conditions for biotic species.**

The Apalachicola ecosystem, fed by freshwater from the Apalachicola River, is "one of the most biologically diverse areas of North America."[14] More than eighty percent of the Apalachicola River's water flow is supplied by the Chattahoochee and Flint Rivers that converge upstream.[15] When healthy, the Apalachicola ecosystem teems with life and supports a vibrant and uniquely Floridian culture and economy. The Apalachicola ecosystem is an array of deeply interconnected, finely calibrated habitats. Pulses of flow provide essential habitat connectivity to the floodplain that stretches out on either side of the River. Downstream, water from the main channel spreads into marshes of the tidal reach, then into Apalachicola Bay and around barrier islands into the Gulf of Mexico. At least eighty percent of

[14] *FEIS* App. C, at C-646.
[15] Complaint for Declaratory and Injunctive Relief at¶45, *Nat'l Wildlife Fed'n, Inc. v. U.S. Army Corps of Eng'rs*, 312 F. Supp. 3d 167 (D.D.C. 2018) (No. 1:17-CV-00772).

the ecosystem's fish species live in the sloughs, tributaries, and swamps fed by fresh water from the River for at least a portion of their lives.[16]

In addition to fostering and connecting habitats in the floodplains, timely water pulses from the River play a vital role in enabling turnover of nutrients and removal of organic detritus.[17] The species populating the Apalachicola ecosystem thrive when adequate flows achieve optimal nutrient conditions for the impressive range of diverse aquatic and vegetative species that live there.[18,19] In contrast, when the flow of freshwater is disrupted or insufficient to properly flush nutrients and detritus, nutrient availability can become oversaturated, thus enabling harmful growth of algae and phytoplankton.[20] Overpopulation of certain types of these organisms disrupts the balance of competition for nutrients, harming beneficial algae species that form the base of the

---

[16] ACF-18_00054263, at ACF-18_00054305.

[17] Wolfgang J. Junk et al., *The Flood Pulse Concept in River-Floodplain Systems*, Canadian Special Publ'n of Fisheries & Aquatic Scis. 106, 112 (1989).

[18] Robert J. Livingston, *Importance of River Flow to the Apalachicola River-Bay System*, Rep. to the Fla. Dep't of Env't Prot. at 4–6 (2008) [hereinafter Livingston, *River Flow*].

[19] For further discussion of low river flow's effects on The Ecosystem's trees and forests, see Appellants' Br. at 9–10.

[20] Livingston, *River Flow*, *supra* note 18, at 4–6.

Apalachicola ecosystem food web.[21] Dissolved oxygen concentrations in the water may also fall during overpopulation events, further exacerbating conditions for basal food web species and negatively impacting the feeding habits of the larger organisms that rely on those species.[22]

Freshwater pulses from the River are also essential to creating an optimal salinity gradient in the Bay.[23] The water of the Bay is composed of salt water from the Gulf of Mexico and fresh water from the River's flow. Because different species require specific salinity ranges, the distribution of salinity levels throughout the Bay is *the* "major factor for determining the distribution of estuarine biota and habitat."[24] When River flows are high, lower levels of salinity extend further from the mouth of the River into the Bay than when river flows are low. Higher salinity concentrations in larger areas of the Bay allow for increased levels of predation by marine species that typically remain closer to the

---

[21] *Id.*
[22] *Id.*
[23] ACF-18_00054106, at ACF-18_00054163.
[24] Steven L. Morey & Dmitry S. Dukhovskoy, *Analysis Methods for Characterizing Salinity Variability from Multivariate Time Series Applied to the Apalachicola Bay Estuary,* 29 J. of Atmospheric & Oceanic Tech. 613, 613 (2012).

higher salinized waters proximal to the Gulf.[25] These predatory species prey upon white shrimp, blue crab, and croaker fish estuarine nursery populations, all of which are commercially fished and have been deemed critical food web populations.[26,27] Higher salinity levels also cultivate rapid growth of harmful pathogens.[28] The Eastern Oyster population of the Bay, which formally formed 90% of Florida's total oyster production before the population's collapse, is particularly sensitive to these pathogens, as well as predation by marine species that increase when salinity levels rise.[29]

Following a period of environmental and economic stress, the Bay's historic oyster fishery collapsed in 2012. Eight years later, in

---

[25] Robert J. Livingston et al., *Modelling Oyster Population Response to Variation in Freshwater Input*, 50 Estuarine, Coastal, & Shelf Sci. 655, 656 (2000); Wenrui Huang et al., *Remote Sensing for Water Quality Monitoring in Apalachicola Bay, USA*, Advances in Earth Observation of Glob. Change 69, 70 (2010).
[26] Livingston, *River Flow*, *supra* note 18, at 5, 12.
[27] For further discussion on estuary health in the Apalachicola Ecosystem, see Appellants' Br. at 10–11.
[28] Edward V. Camp et al., *Collapse of a Historic Oyster Fishery: Diagnosing Causes and Identifying Paths Toward Increased Resilience*, 20 Ecology & Soc'y, Sept. 2015, at 6.
[29] Dara H. Wilber, *Associations Between Freshwater Inflows and Oyster Productivity in Apalachicola Bay, Florida*, 35 Estuarine, Coastal, & Shelf Sci. 179, 180 (1992).

2020, the Florida Fish and Wildlife Conservation Commission shut down oyster harvesting through the end of 2025 in an attempt to rehabilitate the struggling oyster population.[30] While the Bay's oyster population has fluctuated in the past in response to drought or storm events, such as Hurricane Elena in 1985, oyster numbers have traditionally rebounded quickly due to the species' "rapid and massive spawning capabilities."[31] This has not been observed with the most recent population collapse despite rigorous attempts to rehabilitate the population.[32]

The decimation of the Apalachicola Bay Eastern Oyster population has the potential to reverberate through the food web of the Apalachicola ecosystem, as oysters are a keystone species upon which many other species rely. Oysters and their beds, sometimes known as "oyster reefs," provide a food source for other Bay organisms and occupy invaluable nutrient-filtering roles that combat anthropogenic nitrogen

[30] *FWC Approves Measures to Support Recovery and Restoration of Oysters in Apalachicola Bay*, Florida Fish and Wildlife Conservation Commission (Dec. 16, 2020), https://myfwc.com/news/all-news/oyster-commission-1220/.
[31] Livingston, *River Flow*, *supra* note 18, at 5, 57.
[32] For a discussion on other negative impacts documented in the Bay, see Appellants' Br. at 10.

and nutrient loading.[33] Oyster reef structures provide habitats for commercially valuable fish species and form natural bulkheads, or jetties, that combat erosion and sea level rise—events that are expected to increase with climate change.[34]

Decreased freshwater flows from the ACF Basin have also harmed the ecological integrity of the West Florida Shelf of the Gulf of Mexico. Increased incidents of oxygen depletion and losses of fishery productivity in the Gulf have been observed.[35] Without an adequate oxygen supply from the River during the warmer and drier months of the year, the Gulf's marine ecosystems and animals are severely threatened.[36] The Apalachicola River is also a major source of nitrogen for the Gulf as a whole, particularly for the West Florida Shelf fisheries; however, total dissolved nitrogen input becomes precariously low when

---

[33] *See* Jonathan H. Grabowski et al., *Economic Valuation of Ecosystem Services Provided by Oyster Reefs*, 62 Bioscience 900, 900–01 (2012).
[34] *Id.* at 905.
[35] Alejandro Yáñez-Arancibia & John W. Day, *Environmental Sub-Regions in the Gulf of Mexico Coastal Zone: The Ecosystem Approach as an Integrated Management Tool*, 47 Ocean & Coastal Mgmt. 727, 729 (2004).
[36] *See* Michael Santema et al., *Water Column Oxygen Dynamics Within the Coastal Gradient in the Northeastern Gulf of Mexico Inner Shelf,* 104 Cont'l Shelf Rsch. 104 (2015).

river discharge is low.[37] Consequently, phytoplankton productivity and biomass are frequently limited, harming fish species that depend on phytoplankton to support the food web.[38] For example, scientists assessing fishery stocks attribute a recent dip in the biomass of red grouper to an uncharacteristically persistent and large harmful algal bloom in 2005 that also caused a significant die-off of benthic communities, sea turtles, birds, and marine mammals.[39]

In sum, the Apalachicola River and its associated habitats exist in a delicate balance to support an extremely intricate and biodiverse ecosystem. Much of this balance is fostered by the amount and timing of the River's flow of freshwater into proximal floodplain habitats, the Bay, and the bordering waters of the Gulf of Mexico. Degraded environmental conditions have led to the total population collapse of the Eastern Oyster, as well as population reductions of several over

---

[37] Behzad Mortazavi et al., *Nitrogen Budget of Apalachicola Bay, a Bar-Built Estuary in the Northeastern Gulf of Mexico*, 195 Marine Ecology Progress Series 1, 1–2, 11–12 (2000).
[38] *Id*. at 12.
[39] Felicia C. Coleman & Christopher C. Koenig, *The Effects of Fishing, Climate Change, and Other Anthropogenic Disturbances on Red Grouper and Other Reef Fishes in the Gulf of Mexico*, 50 Integrative & Comparative Biology 201, 206 (2010).

species.[40] Thus, a region that has persisted for generations is in the process of being fundamentally and permanently altered.

**b. Existing conditions are likely to be exacerbated by climate change.**

Climate change will adversely impact the ecosystems of the River, Bay, and West Florida Shelf in significant ways.[41] Along with decreased river flow and increased air temperature and water temperatures, the frequency of category four and five Atlantic hurricanes is expected to nearly double by the end of the twenty-first century.[42] The Apalachicola estuary forms the impact zone where storms make landfall, providing a

---

[40] *See* H. Jared Flowers et al., *Spawning Site Selection and Potential Implications of Modified Flow Regimes on Viability of Gulf Sturgeon Populations*, 138 Transactions of the Am. Fisheries Soc'y 1266 (2009); Melanie R. Darst & Helen M. Light, *Drier Forest Composition Associated with Hydrologic Change in the Apalachicola River Floodplain, Florida*, U.S. Geological Surv. (2008), https://doi.org/10.3133/sir20085062.

[41] *See* Ram P. Neupane et al., *Hydrologic Responses to Projected Climate Change in Ecologically Diverse Watersheds of the Gulf Coast, United States,* 39 Int'l J. of Climatology 2227 (2018); Aavudai Anandhi et al., *Hydrologic Characteristics of Streamflow in the Southeast Atlantic and Gulf Coast Hydrologic Region during 1939-2-16 and Conceptual Map of Potential Impacts*, 42 Hydrology, Sept. 2018 at 13.

[42] Morris A. Bender et al., *Modeled Impact of Anthropogenic Warming on the Frequency of Intense Atlantic Hurricanes*, 327 Sci. 454, 456 (2010).

buffer for inland habitats and communities.[43] However, increased storm intensities could overwhelm its capacity to blunt a storm's power in the future.[44] Though the FEIS notes that climate change will impact the Apalachicola River Ecosystem,[45] the Corps violated NEPA by failing to analyze how the Corps' current and projected manipulations of freshwater flow will interact with the effects of climate change to impact the region.

The Apalachicola Bay is rated as "highly vulnerable" to the impacts of sea level rise.[46] As the Corps notes in the FEIS, sea level at Apalachicola, Florida is estimated to rise by 0.16–0.39 feet between 2015 and 2050 and by 1.21–4.51 feet between 2015 and 2100.[47] Under 3.3 feet of sea level rise by 2100, the salinity level in the Bay may increase by 20 percent, further exacerbating the ecological harm caused

---

[43] Dingbao Wang et al., *Climate Change Impact and Uncertainty Analysis of Extreme Rainfall Events in the Apalachicola River Basin, Florida,* 48 J. of Hydrology 125, 132 (2013).
[44] *Id.*
[45] *See*, *e.g.*, ACF-18_00054803, at ACF-18_00054923.
[46] E. Robert Thieler & Erika S. Hammar–Klose, *National Assessment of Coastal Vulnerability to Future Sea-Level Rise: Preliminary Results for the U.S. Gulf of Mexico Coast*, U.S. Geological Survey (2000), https://pubs.usgs.gov/of/2000/of00-179/.
[47] ACF-18_00054803, at ACF-18_00054923.

by salinity disturbances associated with drought and decreased freshwater flow described above.[48] Plant and animal species in the Bay will be among 21 to 39 percent of plant and animal species along the coast of Florida likely to suffer adverse effects, possibly including extinction, from sea level rise.[49]

If the Corps' manipulation of upstream conditions continues to prevent adequate flows at the right times, the Bay will be at even greater risk from sea level rise. River flows play a vital role in the survival of coastal wetland ecosystems by carrying sediment that builds soil in wetlands to counter sea level rise and associated erosion.[50] Because the Corps failed to adequately analyze how its operations, exacerbated by the effects of climate change, will affect salinity concentrations and sediment migration, the FEIS failed to provide the Corps and the public with required information regarding the extent of the harms associated with the Corps' current and projected operations.

---

[48] Laura L. Geselbracht et al., *Modeled Sea Level Rise Impacts on Coastal Ecosystems at Six Major Estuaries on Florida's Gulf Coast: Implications for Adaptation Planning,* PLOS ONE, July 2015, at 1, 12.
[49] *Id.* at 23.
[50] John W. Day et al., *Consequences of Climate Change on the Ecogeomorphology of Coastal Wetlands*, 31 Estuaries and Coasts 477, 480–81 (2008).

## II. The Corps' Management of the ACF System Dictates Apalachicola River Flow, and The Effects of The Corps' Current Management Have Not Been Adequately Described For Decisionmakers and the Public, in Violation of NEPA.


[51]

*We drifted across the dark water and lush green banks of the Apalachicola River . . . I leaned back and looked up into the blue eternity of the sky to see a dozen swallowtail kites high above us dipping in and out of the treetops as they utilized the lift from the river to soar in the heavens above. The beauty of the scene embraced the depth of my soul and brought tears to my eyes.*
*–Clyde Butcher, Nature Photographer*[52]

---

[51] Clyde Butcher, *Dead Lakes 20* (photograph), *in* APALACHICOLA RIVER—AN AMERICAN TREASURE at 50.
[52] Clyde Butcher, APALACHICOLA RIVER—AN AMERICAN TREASURE (Afterword).

Among its many inadequacies,[53] perhaps the most grievous is the FEIS's failure to adequately consider the devastating impacts of the Corps' past and current operations when establishing the baseline against which its proposed actions were compared.[54] The Apalachicola Ecosystem is on the brink of collapse, and the Corps' management of the Apalachicola River's flows is "the dominant influence on freshwater inflows"[55] and one of the few factors that can be readily controlled and impactful.

By determining when and how much water is released from the Jim Woodruff Lock and Dam, the Corps plays a critical role in whether the River provides enough flow to ensure floodplain habitat connectivity and whether salinity and oxygen levels are appropriate throughout the Apalachicola Ecosystem.

///

///

///

///

[53] *See* Appellants' Br. at 19–44.
[54] *See id.* at 20–27.
[55] ACF-18_00054106, at ACF-18_00054163.

**a. The Corps violated NEPA by using an improper baseline, insufficiently analyzing impacts on fish and wildlife, and failing to analyze its operations in respect to expected climate change effects.**

NEPA requires the Corps to analyze the direct, indirect, and cumulative impacts of its actions.[56] The results of such analyses should be stated clearly in the FEIS and supported by evidence in order to inform agency decisionmakers and the public.[57] There is clear evidence[58] of the Corps' operations resulting in harm from low river flow provided to the floodplains and the Bay. Remarkably, and in error, the FEIS ignored the implications of existing scientific studies, including the Corps' own studies and observations of declining conditions.[59] The FEIS concluded that the Corps' current and past manipulations of Apalachicola River flows have a negligible effect on the ecosystem.[60] From this false premise, the FEIS concludes that operations under the Update will have negligible impacts because operations under the

[56] 40 C.F.R. §§ 1508.7, 1508.25; *Grand Canyon Trust v. F.A.A.*, 290 F.3d 339, 341–43 (D.C. Cir. 2002).
[57] 40 C.F.R. §1502.1
[58] *See supra* Section I(a).
[59] For a discussion on the Corps' observations of declining ecological conditions in the Apalachicola Ecosystem, see Appellants' Br. at 23–26.
[60] *See supra* note 12.

Update are similar to current and past operations. As a result, the FEIS fails to adequately account for the harms to the Apalachicola Ecosystem that the Corps' operations have caused, and it fails to explain how and why conditions are likely to worsen under the Update. In its current state, the FEIS does little, if anything, to inform local fishermen, residents, and policymakers of the contributing sources of the current degradation, the likely extent of harm from the Corps' operations under the Update, or how the harm can be mitigated.[61]

Further, despite the incredible number and diversity of species that populate the region, some of which the Corps lists,[62] the FEIS only offered analysis of potential impacts on 4 animal species: the federally-protected Gulf Sturgeon and three federally-protected mussel species.[63] Decisionmakers, citizens, and other readers are left without adequate information to know the potential of the Corps' impacts on the region's

[61] For a discussion on the Corps' lack of mitigation considerations, see Appellants' Br. at 43–45.
[62] *See* Appellants' Br. at 24 ("At most, the "Affected Environment" Section recited *types* of birds, mammals, reptiles, amphibians, fish, and terrestrial microinvertebrates found generally in the broader ACF Basin") (quoting ACF-18_00054263, at ACF-18_00054309–12).
[63] ACF-18_00054263, at ACF-18_00054324–30.

more than 50 species of mammals,[64] over 80 species of reptiles,[65] over 40 species of amphibians,[66] 131 species of fish,[67] approximately 300 species of birds[68], and over 1300 species of plants[69], several of which have seen population decline in recent years.[70] The Corps' analysis of only four species out of the thousands that call the Apalachicola region home did not provide adequate information to decisionmakers, citizens, and others whom were owed accurate information and analyses under NEPA.

Finally, the Corps' lack of sufficient cumulative impact analysis concerning climate change violates NEPA.[71] In deciding whether a particular agency's EIS or environmental assessment (EA) is sufficient to satisfy NEPA's mandate, courts assess whether the analysis document adequately considers the cumulative effects of the agency's

---

64 *Id.* at ACF-18_00054320.
65 *Id.*
66 *Id.*
67 *Id.*
68 Richard J. Blaustein, *Biodiversity Hotspot: The Florida Panhandle*, 50 BioScience 784, 786 (2008).
69 ACF-18_00054263, at ACF-18_00054320.
70 *See supra* Section I(a).
71 *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41, 52 (D.D.C. 2019).

actions on climate change and the environment.[72] Although the FEIS provides a summary discussion of climate change's potential effects on the ACF Basin as a whole,[73] the FEIS fails to adequately analyze how the Corps' water management practices will exacerbate climate change's effects on water levels, salinity levels, and other water quality indicators.[74] Without this data, the Corps, decisionmakers, and the public remain uninformed regarding how the Corps' management of the ACF Basin will (or will not) contribute to the effects of climate change that will impact the Apalachicola Ecosystem, as well as the entire ACF Basin region.

**b. The Corps was made aware of the deficiencies in its methods and still failed to address those deficiencies.**

Numerous stakeholders informed the Corps of shortcomings in its analysis and the resulting improper baseline in response to the Corps'

---

[72] *See, e.g.*, *Ctr for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172 (9th Cir. 2008); *WildEarth Guardians v. United States Bureau of Land Mgmt.* 870 F.3d 1222 (10th Cir. 2017).
[73] *See FEIS*, App. N.
[74] *FEIS*, App. N, at N-6–42. Instead of providing an analysis of how Corps management activities will or will not contribute to the effects of climate change, the Corps provides a detailed analysis of whether their operations will be able to be maintained in the face of climate change.

draft environmental impact statement.[75] These comments—including warnings from the Alabama Department of Environmental Management; the Florida Department of Environmental Protection; the Board of Water Commissioners of Columbus, Georgia; the Chattahoochee Riverkeeper; the Florida Conservation Coalition; and the National Wildlife Federation—gave the Corps ample notice and time to address and correct its mistakes before publishing its FEIS.[76] Instead, the Corps responded by doubling down on conclusory statements without pointing to evidence or analysis.[77] The Corps' refusal to take a hard look at the effects of its past and current operations or the implications of its data, even when implored to do so by disparate parties, is disheartening, if not surprising.[78]

---

75 *FEIS*, App. C at C–79.
76 *FEIS*, App. C at Table C–321, C–636, C-284, C–695, C–950, C–976.
77 *See FEIS*, App. C at C–128, C–176, C–229, C–244, C–266, C–322, C–608, C–613, C–647, C–703, C–830, C–869, C–996, C–999, C–1058.
78 *See Van Abbema v. Fornell*, 807 F.2d 633 (7th Cir. 1986); *see also Env't Def. v. United States Army Corps of Eng'rs*, 515 F. Supp. 2d 69 (D.D.C. Sept. 13, 2007); In re *Tri-State Water Rts. Litig.*, No. 07-MD-01, 2010 WL 11586590 (M.D. Fla July 12, 2010); *Nat'l Parks Conservation Ass'n v. Semonite*, 925 F.3d 500 (D.C. Cir. 2019); *Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, 440 F. Supp. 3d 1 (D.D.C. March 25, 2020).

The APA prohibits agencies from taking action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,"[79] and requires "reasoned decisionmaking," based on a "rational connection between the facts found and the choice made."[80] "A decision made in reliance on false information, developed without an effort in objective good faith to obtain accurate information, cannot be accepted as a 'reasoned decision.'"[81] As the Seventh Circuit has explained: "If the Corps bases its conclusions on entirely false premises or information, even when its attention is specifically directed to possible defects in its information, we would have difficulty describing its conclusions as reasoned; we would have to call them arbitrary and capricious."[82]

The Alabama Department of Environmental Management issued a comment warning the Corps that its No Action Alternative data was "[barely an acceptable] representation of mean and median flows for

---

[79] 5 U.S.C. §706(2)(A).
[80] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins.*, 463 U.S. 29, 52 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 83 S.Ct. 156, 246 (1962)). For further discussion on how the Corps' conclusions were arbitrary and unreasonable, see Appellant's Br. at § I. B.
[81] *Sierra Club v. United States Army Corps of Eng'rs*, 701 F.2d 1011, 1035 (2d Cir. 1983).
[82] *Van Abbema*, 807 F.2d at 639.

current conditions" and "grossly misrepresent[ed] minimum and maximum flows."[83] Since the Apalachicola river basin is so dependent on its flood pulses, as discussed above in I(a), accurate representations of those points of data are crucial to accurately measure the impact of any proposed plan. The Corps did not respond to this comment by correcting the information, nor did it offer an explanation as to why the data might be incorrect. Instead, the Corps noted that the relevant section had been "revised" to indicate that the Corps' model should "not be expected to necessarily simulate observed data for high or low flows."[84]

Similarly, the Florida Department of Environmental Protection ("Florida") warned the Corps that its Proposed Action Alternative failed to account for periods of low flow, which could "adversely affect water quality" and "adversely affect navigation."[85] Florida also found that the Corps' Proposed Action Alternative would "adversely affect the flow of water."[86] The Corps brushed these comments aside by stating that its

[83] *FEIS*, App. C at C–322.
[84] *Id.*
[85] *FEIS*, App. C at C–648.
[86] *Id.*

Proposed Action Alternative would result in only one instance of "4,500 [cubic feet per second] compared to zero during the 73-year period of record."[87] The Corps failed to give an adequate explanation for this threshold, which does not line up with other thresholds that have consequences for the wildlife of the river.[88]

Further, Chattahoochee Riverkeeper, an Atlanta-based nonprofit, notified the Corps of its "Flawed Criteria during Screening to select Management Alternatives," in its comment submission.[89] The Corps was reminded that although it had given "equal weight to six somewhat redundant and insufficient indicators" in evaluating the fish and wildlife project purpose, an "external peer review panel . . . noted there is 'no evidence to support equal weighting for each water availability and water quality parameter . . . to evaluate effects on fish and wildlife resources.'"[90] The Corps ignored Chattahoochee Riverkeeper. The Corps

---

[87] *FEIS*, App. C at C–647.
[88] The Corps' threshold of 4,500 cfs, as the Appellants point out, is a significant departure from the prior minimum of 5,000 cfs and less than half the average minimum flow rate measured over a relevant historical period. *See* Appellants' Br. at 28.
[89] *FEIS*, App. C at C–704.
[90] *Id.* (quoting Battelle Memorial Institute, *Final Independent External Peer Review Report: Apalachicola-Chattahoochee-Flint River Water*

also ignored the call from the Battelle Memorial Institute, the Corps' own external review panel, to "giv[e] more weight to those parameters/indicators that are more important to fish and wildlife resources."[91]

Dozens of public comments like these called the Corps' attention to the specific flaws in its analysis, particularly the faulty baseline information it chose to use for its No Action Alternative.[92] The Corps failed to adequately respond to these comments or take them into consideration when drafting its FEIS. As a result, the Corps' final decisions do not match the data it collected. Rather than the product of reasoned decisionmaking, the FEIS was arbitrary and capricious.

///

///

///

///

///

---

*Control Manual, Environmental Impact Statement, and Water Supply Storage Assessment Report*, at vi (Prepared for the Corps, Contract No. W9112HQ-10-D-0002, Sept. 4, 2015)).

[91] *See FEIS*, App. C at C-704.

[92] *See*, *e.g.*, *FEIS*, App. C at C-996.

## CONCLUSION

[93]

*The Apalachicola River is the heart of Florida's Panhandle. Steep bluffs, grassy glades and rich forests rise from the banks of the watery trail as it winds one hundred miles from the Georgia border to the Gulf of Mexico. This natural treasure is the lifeblood for a vast expanse of untouched land, providing a home to rare, threatened and endangered wildlife. Its waters flow into Apalachicola Bay, one of the thriving estuarine systems in the northern hemisphere. Once a navigable highway for steamboats carrying cotton for export, today the river is a hub for eco-tourism and supports*

[93] Clyde Butcher, *Indian Pass 1* (photograph), *in* APALACHICOLA RIVER—AN AMERICAN TREASURE at 18.

*a productive recreational and commercial fishery.*
*–Florida Governor Jeb Bush, 2006.*[94]

When an agency like the U.S. Army Corps of Engineers fails to comply with the law and evades its responsibility to mitigate harm, the judicial branch becomes the public's last line of defense. The Apalachicola River Ecosystem, one of the most important ecosystems in the South, is on the brink of collapse, and its future is now squarely in the Court's hands. Amicus Bob Graham respectfully requests that the Court remind the Corps of its legal duties and ensure that the Corps follows the law, before this treasured ecosystem is lost forever. For the reasons set forth above, *Amicus* respectfully submits this Brief in support of Appellants, and joins in requesting that the Court reverse the decision of the lower court.

Respectfully submitted this 9th day of December, 2022.

/s/ Jon L. Mills
JON L. MILLS
Boies Schiller Flexner, LLP
100 SE Second Street, Suite 2800
Miami, FL 33131
T: (305) 357-8449
jmills@bsfllp.com

---

[94] Clyde Butcher, APALACHICOLA RIVER—AN AMERICAN TREASURE (Forward).

MICHAEL ROBINSON-DORN
Pro Hac Vice Pending
University of California, Irvine
School of Law
Environmental Law Clinic
P.O. Box 5479
Irvine, CA 92616-5479
T: (949) 824-6688
mrobinson-dorn@law.uci.edu

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing Brief complies with the type-volume limitations and typeface requirements of Fed. R. App. P. 32(a). Specifically, this brief is printed in proportionally spaced, 14-point Century Schoolbook font using one-inch margins in compliance with Fed. R. App. P. 32(a)(4)–(6), and with the exception of footnotes and indented quotations, it is printed with double-spacing in compliance with Fed. R. App. P. 32(a)(4). Excluding the items that are exempted under Fed. R. App. P. 32(f), this brief contains a total of 6,131 words to meet the limitation of Fed. R. App. P. 32(a)(7)(B)(i). This certificate was prepared in reliance on the word processing system (Microsoft Word) used in this brief.

/s/ Jon L. Mills
JON L. MILLS

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 25(c), I hereby certify that on the 9th day of December 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record in this case. All registered CM/ECF users will be served by the Court's CM/ECF system.

/s/ Jon L. Mills
JON L. MILLS