**NO. 21-13104
(NO. 21-13444)**

---

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

STATE OF ALABAMA, et al.,
*Plaintiffs-Appellants,*

v.

UNITED STATES ARMY CORPS OF ENGINEERS, et al.,
*Defendants-Appellees.*

---

On appeal from the United States District Court for the Northern District of
Georgia, Civil Action No. 1:18-MI-00043-TWT

---

## APPELLANTS' CONSOLIDATED REPLY TO APPELLEES' AND
## INTERVENOR-APPELLEES' RESPONSE BRIEFS

---

TANIA GALLONI
FL Bar No. 619221
CHRISTINA I. REICHERT
FL Bar No. 114257
Earthjustice
4500 Biscayne Blvd. Ste. 201
Miami, FL 33137
T: (305) 440-5433
F: (850) 681-0020
tgalloni@earthjustice.org
creichert@earthjustice.org

BONNIE MALLOY
FL Bar No. 86109
Earthjustice
111 S. MLK Jr. Blvd.
Tallahassee, FL
T: (850) 681-0031
F: (850) 681-0020
bmalloy@earthjustice.org

*Attorneys for Plaintiffs-Appellants National Wildlife Federation, Florida Wildlife
Federation, and Apalachicola Bay and River Keeper*

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

1.   Ackerman, Georgia (Standing Declarant)

2.   Allen, John C. (Attorney for Appellee / Intervenor State of Georgia)

3.   Allen, Kenneth W. (Attorney for Appellee / Intervenor State of Georgia)

4.   Andre, Abigail (Attorney for Amici Curiae in the District Court: Calhoun County, Fla., Franklin County, Fla., Liberty County, Fla., Jackson County, Fla., Florida Coastal Conservation Association, Trip Aukeman, Albert Bryant, Shannon Hartsfield, Lynn Martina, Kevin Martina, Carmen McLemore, Daniel Taunton, Richard Bickel, Thomas Ward, and City of Apalachicola, Fla.)

5.   Apalachee Audubon Society (Amicus Curiae in the District Court)

6.   Apalachicola Bay and River Keeper (Appellant)

7.   Atlanta Regional Commission (Appellee / Intervenor)

8.   Aukeman, Trip (Amicus Curiae in the District Court)

9.   Balthrop, Mary (Standing Declarant)

10.  Bickel, Richard (Amicus Curiae in the District Court)

11.  Boies Schiller Flexner LLP (Attorneys for Amici Curiae in the District Court Robert Graham and Gwendolyn Graham)

i

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

12.    Brock, Virginia (Standing Declarant)

13.    Bryant, Albert (Amicus Curiae in the District Court)

14.    Calhoun County, Fla. (Amicus Curiae in the District Court)

15.    Carr, Christopher M. (Attorney for Appellee / Intervenor State of Georgia)

16.    Chapman, Jeremy J. (District Commander for Mobile District of the U.S. Army Corps of Engineers)

17.    City of Apalachicola, Fla. (Amicus Curiae in the District Court)

18.    City of Atlanta, Ga. (Appellee / Intervenor)

19.    City of Gainesville, Ga. (Appellee / Intervenor)

20.    Cobb-County Marietta Water Authority (Appellee / Intervenor)

21.    Coe, Alisa (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

22.    DeKalb County, Ga. (Appellee / Intervenor)

23.    DeLapp, James A. (Appellee)

24.    Drumm, Starr T. (Attorney for Appellant State of Alabama)

25.    Dycus, John P. (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

ii

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

26.    Earthjustice (Attorneys for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

27.    Ellerhorst, Shelly J. (Attorney for Appellee / Intervenor State of Georgia)

28.    Fellows LaBriola, LLP (Attorneys for Appellant State of Alabama)

29.    Florida Coastal Conservation Association (Amicus Curiae in the District Court)

30.    Florida Wildlife Federation (Appellant)

31.    Forsyth County, Ga. (Appellee / Intervenor)

32.    Fortuna, John L. (Attorney for Appellees / Intervenors Atlanta Regional Commission, Cobb County-Marietta Water Authority, DeKalb County, Ga., Forsyth County, Ga., Fulton County, Ga., Gwinnett County, Ga., City of Atlanta, Ga., and City of Gainesville, Ga.)

33.    Franklin County, Fla. (Amicus Curiae in the District Court)

34.    Fuller, Manley (Standing Declarant)

35.    Fulton County, Ga. (Appellee / Intervenor)

36.    Galloni, Tania (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

37.    Gormley, Neil E. (Attorney for Appellants National Wildlife Federation,

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

38.    Graham, Gwendolyn (Amicus Curiae in the District Court)

39.    Graham, Robert (Amicus Curiae)

40.    Gray, Michael T. (Attorney for Federal Appellees)

41.    Gretchen, Michael C. (Attorney for Appellant State of Alabama)

42.    Gwinnett County, Ga. (Appellee / Intervenor)

43.    Harris, Michael R. (Attorney for Proposed Amici Curiae: Franklin County, Fla., Trip Aukeman, Richard Bickel, Albert Bryant, Shannon Hartsfield, Lynn Martina, Carmen McLemore, Daniel Taunton, Thomas Ward, The City of Apalachicola, Fla., Calhoun County, Fla., Liberty County, Fla., The Florida Coastal Conservation Association and Kevin Martina)

44.    Hartsfield, Shannon (Amicus Curiae in the District Court)

45.    Hill, Brandt P. (Attorney for Appellant State of Alabama)

46.    Hood, Laurie (Standing Declarant)

47.    Jackson County, Fla. (Amicus Curiae in the District Court)

48.    Jackson, Robert B., IV (Attorney for Proposed Amici Curiae: Franklin County, Fla., Trip Aukeman, Richard Bickel, Albert Bryant, Shannon Hartsfield, Lynn Martina, Carmen McLemore, Daniel Taunton, Thomas

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

Ward, The City of Apalachicola, Fla., Calhoun County, Fla., Liberty County, Fla., The Florida Coastal Conservation Association and Kevin Martina)

49. Jay, Andrew (Standing Declarant)

50. Jon L. Schwartz, Attorney at Law, P.C. (Attorneys for Amici Curiae in the District Court Robert Graham and Gwendolyn Graham)

51. Jones, Lewis B. (Attorney for Appellees / Intervenors Atlanta Regional Commission, Cobb County-Marietta Water Authority, DeKalb County, Ga., Forsyth County, Ga., Fulton County, Ga., Gwinnett County, Ga., City of Atlanta, Ga., and City of Gainesville, Ga.)

52. Jones Fortuna LP (Attorneys for Appellees / Intervenors Atlanta Regional Commission, Cobb County-Marietta Water Authority, DeKalb County, Ga., Forsyth County, Ga., Fulton County, Ga., Gwinnett County, Ga., City of Atlanta, Ga., and City of Gainesville, Ga.)

53. Kazmarek Mowrey Cloud Laseter LLP (Attorneys for Appellee / Intervenor State of Georgia)

54. Kelley, Jason E. (Division Commander for the South Atlantic Division of the U.S. Army Corps of Engineers)

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

55.    Kim, Todd (Assistant Attorney General and Attorney for Federal Appellees)

56.    King & Spalding LLP (Attorneys for Appellees / Intervenors Atlanta Regional Commission, Cobb County-Marietta Water Authority, DeKalb County, Ga., Forsyth County, Ga., Fulton County, Ga., Gwinnett County, Ga., City of Atlanta, Ga., and City of Gainesville, Ga.)

57.    Kirkland & Ellis LLP (Attorneys for Appellee / Intervenor State of Georgia)

58.    Korte, Brett (Attorney for Amicus Curiae in the District Court Robert Graham and Gwendolyn Graham)

59.    LaBriola, Stephen T. (Attorney for Appellant State of Alabama)

60.    LaCour, Jr., Edmund G. (Attorney for Appellant State of Alabama)

61.    Lamont, Douglas (Appellee)

62.    Law Office of Barbara Sanders (Attorney for Amici Curiae in the District Court St. George Island Civic Club, Inc., and St. George Plantation Owners' Association, Inc.)

63.    Liberty County, Fla. (Amicus Curiae in the District Court)

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

64. Luebkemann, Jordan (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

65. Malloy, Bonnie (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

66. Marshall, Steven (Attorney for Appellant State of Alabama)

67. Martina, Kevin (Amicus Curiae in the District Court)

68. Martina, Lynn (Amicus Curiae in the District Court)

69. Maynard Nexsen (Attorneys for Appellant State of Alabama)

70. Maynard, Cooper & Gale, P.C. (Attorneys for Appellant State of Alabama)

71. McLemore, Carmen (Amicus Curiae in the District Court)

72. Mills, Jon (Attorney for Amicus Curiae Robert Graham and Amicus Curiae in the District Court Gwendolyn Graham)

73. National Wildlife Federation (Appellant)

74. Neiman, Jr., John C. (Attorney for Appellant State of Alabama)

75. Ocean Conservancy (Amicus Curiae in the District Court)

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

76. Patton Dycus Law, LLC (Attorneys for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper in the District Court)

77. Pinkham, Jaime A. (Acting Assistant Secretary of the U.S. Army for Civil Works)

78. Primis, Craig S. (Attorney for Appellee / Intervenor State of Georgia)

79. Reichert, Christina I. (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

80. Roady, Stephen E. (Attorney for Amici Curiae in the District Court Apalachee Audubon Society and Ocean Conservancy)

81. Rodriguez, Gonzalo E. (Attorney for Appellants National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and River Keeper)

82. Robertson, Preston (Standing Declarant)

83. Robinson, Clay (Standing Declarant)

84. Robinson-Dorn, Michael (Attorney for Amicus Curiae Robert Graham and Amicus Curiae in the District Court Gwendolyn Graham)

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

85.   Samet, Melissa (Standing Declarant)

86.   Sanders, Barbara (Attorney for Amici Curiae in the District Court St. George Island Civic Club, Inc., and St. George Plantation Owners' Association, Inc.)

87.   Schwartz, Jonathan L. (Attorney for Amicus Curiae in the District Court Robert Graham and Gwendolyn Graham)

88.   Schifman, Reuben S. (Attorney for Appellee Federal Defendants)

89.   Semonite, Todd T. (Appellee)

90.   Speer, Robert M. (Appellee)

91.   Spellmon, Scott A. (Commander and Chief of Engineers of the U.S. Army Corps of Engineers)

92.   St. George Island Civic Club, Inc. (Amicus Curiae in the District Court)

93.   St. George Plantation Owners' Association, Inc. (Amicus Curiae in the District Court)

94.   Stack & Associates, P.C. (Attorneys for Amici Curiae in the District Court Apalachee Audubon Society, Ocean Conservancy, St. George Island Civic Club, Inc., and St. George Plantation Owners' Association, Inc.)

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

95. Stack, Donald J. (Attorney for Amici Curiae in the District Court Apalachee Audubon Society, Ocean Conservancy, St. George Island Civic Club, Inc., and St. George Plantation Owners' Association, Inc.)

96. State of Alabama (Appellant)

97. State of Georgia (Appellee / Intervenor)

98. Sturm, Kimberly A. (Attorney for Amici Curiae in the District Court: Calhoun County, Fla., Franklin County, Fla., Liberty County, Fla., Jackson County, Fla., Florida Coastal Conservation Association, Trip Aukeman, Albert Bryant, Shannon Hartsfield, Lynn Martina, Kevin Martina, Carmen McLemore, Daniel Taunton, Richard Bickel, Thomas Ward, and City of Apalachicola, Fla.)

99. Taunton, Daniel (Amicus Curiae in the District Court)

100. Thrash Jr, Thomas W. (U.S. District Judge for the Northern District of Georgia)

101. Tonsmeire, Dan (Standing Declarant)

102. Turner, David C. (Appellee)

103. University of California Irvine Environmental Law Clinic (Attorneys for Amici Curiae Robert Graham and Amicus Curiae in the District Court

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

Gwendolyn Graham)

104. U.S. Army Corps of Engineers (Appellee)

105. U.S. Department of Justice, Environmental and Natural Resources Division (Attorneys for Federal Appellees)

106. Vermont Law School Environmental Advocacy Clinic (Attorneys for Amici Curiae in the District Court: Calhoun County, Fla., Franklin County, Fla., Liberty County, Fla., Jackson County, Fla., Florida Coastal Conservation Association, Trip Aukeman, Albert Bryant, Shannon Hartsfield, Lynn Martina, Kevin Martina, Carmen McLemore, Daniel Taunton, Richard Bickel, Thomas Ward, and City of Apalachicola, Fla.)

107. Waldbeser, Drew F. (Attorney for Appellee / Intervenor State of Georgia)

108. Ward, Thomas (Amicus Curiae in the District Court)

109. Weissman, P.C. (Attorneys for Amici Curiae in the District Court Calhoun County, Fla., Franklin County, Fla., Liberty County, Fla., Jackson County, Fla., Florida Coastal Conservation Association, Trip Aukeman, Albert Bryant, Shannon Hartsfield, Lynn Martina, Kevin Martina, Carmen McLemore, Daniel Taunton, Richard Bickel, Thomas Ward, and City of Apalachicola, Fla.)

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

110.   Williams, Jean E. (Attorney for Federal Appellees)

111.   Wormuth, Christine (Secretary of the United States Army)

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND  CORPORATE DISCLOSURE STATEMENT ...................................................................... i

TABLE OF CONTENTS..................................................................... xiii

TABLE OF CITATIONS ...................................................................xv

INTRODUCTION .............................................................................1

ARGUMENT ....................................................................................2

    I.    The Corps Violated NEPA...........................................................2

        A.  The Corps Relied on a Flawed Premise.....................................2

        B.  The Corps Failed to Analyze Drought Operation Impacts......................7

        C.  The Corps Failed to Analyze Cumulative Impacts................................10

        D.  The Corps Unlawfully Rejected Reasonable Alternatives. ...................14

            1.    The Corps Rejected Reasonable WMAs...............................14

            2.    The Corps Failed to Consider Ecologically Sound Alternatives. .......18

        E.  The Corps Failed to Adequately Consider Mitigation. .........................19

    II.   WRDA's Mitigation Requirement Applies to "Any Report.".....................21

        A.  The Plain Meaning of "Any Report" Includes an EIS. .........................22

        B.  Statutory Context Supports the Plain Meaning. ....................................23

        C.  Appellees' Reading Would Render the Amendment Superfluous.........29

        D.  Legislative History Does Not Support Appellees' Reading...................32

        E.  Congress Has Not Acquiesced to the Corps' Interpretation...................34

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

F.   The Corps' Guidance Deserves No Deference........................................35

III.   The District Court Erred in Denying Leave to Amend. ..............................36

A.   The Motion Was Timely....................................................................37

B.   The FWCA Claim is Legally Cognizable.............................................41

C.   The RHA Claim is Legally Cognizable................................................45

CERTIFICATE OF COMPLIANCE...........................................................................50

CERTIFICATE OF SERVICE ....................................................................................51

xiv

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

## TABLE OF CITATIONS

**Cases**                                                                    **Page(s)**

*Andrx Pharm., Inc. v. Elan Corp., PLC,*
   421 F.3d 1227 (11th Cir. 2005) ..........................................................39

*In re Appling*,
   848 F.3d 953 (11th Cir. 2017) .......................................................23, 24

*Bair v. Cal. Dep't of Transp.*,
   982 F.3d 569 (9th Cir. 2020) ...........................................................17

*Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*,
   133 F.3d 816 (11th Cir. 1998) ..........................................................35

*Bonner v. City of Pritchard*,
   661 F.2d 1206 (11th Cir. 1981) ........................................................14

*Brewer-Giorgio v. Producers Video, Inc.*,
   216 F.3d 1281 (11th Cir. 2000) ........................................................37

*Bryant v. Dupree*,
   252 F.3d 1161 (11th Cir. 2001) ........................................................40

*Cascadia Wildlands v. Bureau of Indian Affairs*,
   801 F.3d 1105 (9th Cir. 2015) ..........................................................11

*CBS Inc. v. PrimeTime 24 Joint Venture*,
   245 F.3d 1217 (11th Cir. 2001) ...............................................22, 28, 29

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994)......................................................................35

*CFTC v. Schor*,
   478 U.S. 833 (1986)......................................................................35

*Chickasaw Nation v. United States*,
   534 U.S. 84 (2001).......................................................................33

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

*Citizens for Smart Growth v. Sec'y Dep't of Transp.*,
669 F.3d 1203 (11th Cir. 2012) ............................................................................15

*City of Charleston v. Hotels.com, LP*,
487 F. Supp. 2d 676 (D.S.C. 2007) ..............................................................37, 40

*City of Los Angeles v. FAA*,
63 F.4th 835 (9th Cir. 2023) ..................................................................................3

*City of N. Miami v. FAA*,
47 F.4th 1257 (11th Cir. 2022) .........................................................................7, 15

*City of Oxford v. FAA*,
428 F.3d 1346 (11th Cir. 2005) ..............................................................................8

*Colo. Env't Coal. v. Dombeck*,
185 F.3d 1162 (10th Cir. 1999) ...........................................................................15

*Covia P'ship v. Nw. Airlines, Inc.*,
No. 93 C 3008, 1998 WL 102705 (N.D. Ill. Mar. 2, 1998)................................39

*CSX Corp. v. United States*,
18 F.4th 672 (11th Cir. 2021) ..............................................................................21

*Ctr. for Biological Diversity v. U.S. Forest Serv.*,
No. CV 22-114-M-DWM, 2023 WL 5310633 (D. Mont. Aug. 17, 2023) ..........7

*Druid Hills Civic Ass'n v. Fed. Highway Admin.*,
772 F.2d 700 (11th Cir. 1985) .........................................................................5, 16

*Env't Def. Fund v. U.S. Army Corps of Eng'rs*,
492 F.2d 1123 (5th Cir. 1974) .......................................................................14, 18

*Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*,
336 F. Supp. 2d 1239 (S.D. Fla. 2004)................................................................39

*Fla. Keys Citizens Coal., Inc. v. U.S. Army Corps of Eng'rs*,
374 F. Supp. 2d 1116 (S.D. Fla. 2005)................................................................15

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

*Floyd v. E. Airlines, Inc.*,
   872 F.2d 1462 (11th Cir. 1989) ..........................................................................37

*Grand Canyon Trust v. FAA*,
   290 F.3d 339 (D.C. Cir. 2002)................................................................................8

*Green v. Am. Broad. Cos., Inc.*,
   647 F. Supp. 1359 (D.D.C. 1986)........................................................................40

*L.S. ex rel. Hernandez v. Peterson*,
   982 F.3d 1323 (11th Cir. 2020)...........................................................................43

*Holy Cross Wilderness Fund v. Madigan*,
   960 F.2d 1515 (10th Cir. 1992) ...........................................................................15

*INS v. Cardoza-Fonseca*,
   480 U.S. 421 (1987)..............................................................................................33

*Jackson v. Fulton Cnty.*,
   No. 1:12-CV-0518, 2013 WL 12384279 (N.D. Ga. Nov. 6, 2013)....................40

*Ky. Riverkeeper, Inc. v. Rowlette*,
   714 F.3d 402 (6th Cir. 2013) ...............................................................................20

*La. State v. U.S. Army Corps of Eng'rs*,
   834 F.3d 574 (5th Cir. 2016) ...............................................................................36

*Lands Council v. Powell*,
   395 F.3d 1019 (9th Cir. 2005) .............................................................................13

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020)..............................................................................................47

*Maynard v. Board of Regents*,
   342 F.3d 1281 (11th Cir. 2003) ......................................................................39, 40

*In re MDL-1824 Tri-State Water Rights Litigation*,
   644 F.3d 1160 (11th Cir. 2011) ..........................................36, 45, 46, 47, 48

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

*Mulligan v. Marshalls of Ma, Inc.*,
   No. 1:08-CV-573, 2009 WL 10664906 (N.D. Ga. Oct. 30, 2009)...............38, 40

*N. Buckhead Civic Ass'n v. Skinner*,
   903 F.2d 1533 (11th Cir. 1990) .........................................................................15

*Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*,
   46 F. Supp. 3d 1254 (M.D. Fla. 2014)................................................................20

*Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*,
   75 F.4th 743 (7th Cir. 2023) ............................. 15, 16, 21, 23, 26, 27, 29, 31, 32

*Neighbors of Cuddy Mountain v. U.S. Forest Serv.*,
   137 F.3d 1372 (9th Cir. 1998) .....................................................................19, 20

*Nguyen v. United States*,
   556 F.3d 1244 (11th Cir. 2009) .........................................................................43

*Niz-Chavez v. Garland*,
   593 U.S. 155 (2021)............................................................................................21

*Nw. Env't Advocates v. Nat'l Marine Fisheries Serv.*,
   460 F.3d 1125 (9th Cir. 2006) ...........................................................................12

*O'Reilly v. All State Fin. Co.*,
   No. 22-30608, 2023 WL 6635070 (5th Cir. Oct. 12, 2023) ................................5

*Pennaco Energy, Inc. v. U.S. Dep't of Interior*,
   377 F.3d 1147 (10th Cir. 2004) ...........................................................................7

*Pinares v. United Techs. Corp.*,
   973 F.3d 1254 (11th Cir. 2020) .........................................................................29

*POM Wonderful LLC v. Coca-Cola Co.*,
   573 U.S. 102 (2014)............................................................................................48

*Pub. Citizen, Inc. v. FAA*,
   988 F.2d 186 (D.C. Cir. 1993)..............................................................................5

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

*Red Lion Broad. Co. v. FCC*,
  395 U.S. 367 (1969)..................................................................................35

*Robertson v. Methow Valley Citizens Council*,
  490 U.S. 332 (1989)..................................................................................19

*SEC v. Levin*,
  849 F.3d 995 (11th Cir. 2017) ..................................................................28

*Smith v. Duff Phelps, Inc.*,
  5 F.3d 488 (11th Cir. 1993) .......................................................................39

*Sosa v. Airprint Sys., Inc.*,
  133 F.3d 1417 (11th Cir. 1998) .................................................................37

*South Dakota v. Ubbelohde*,
  330 F.3d 1014 (8th Cir. 2003) ...................................................................44

*St. Johns Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*,
  462 F. Supp. 3d 1256 (M.D. Fla. 2020)..............................................10, 13

*Tanner v. United States*,
  483 U.S. 107 (1987)..................................................................................33

*Tex. Comm. on Nat. Res. v. Marsh*,
  736 F.2d 262 (5th Cir.) .............................................................................43

*Theodore Roosevelt Conservation P'ship v. Salazar*,
  616 F.3d 497 (D.C. Cir. 2010)..................................................................20

*Tongass Conservation Soc'y v. Cheney*,
  924 F.2d 1137 (D.C. Cir. 1991).................................................................16

*United States v. Arizona*,
  295 U.S. 174 (1935), Doc. 71 ...................................................................25

*United States v. DBB, Inc.*,
  180 F.3d 1277 (11th Cir. 1999) .................................................................33

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

*United States v. Great N. Ry. Co.*,
  287 U.S. 144 (1932)...............................................................................24

*United States v. Obando*,
  891 F.3d 929 (11th Cir. 2018) ..............................................................28

*United States v. Taylor*,
  596 U.S. 845 (2022)...............................................................................32

*United States v. Texas*,
  507 U.S. 529 (1993)...............................................................................48

*United States v. Wood*,
  925 F.2d 1580 (11th Cir. 1991) .............................................................41

*Van Buren v. United States*,
  593 U.S. 374 (2021)...............................................................................23

*Vill. of Bensenville v. FAA*,
  457 F.3d 52 (D.C. Cir. 2006)...................................................................5

*Wis. Cent. Ltd. v. United States*,
  585 U.S. 274 (2018)...............................................................................47

## Federal Statutes

5 U.S.C. § 704.........................................................................................43

16 U.S.C. § 663(a) ..........................................................................41, 43, 44

16 U.S.C. § 663(b) .................................................................................44

33 U.S.C. § 2238(a)(3)............................................................................26

33 U.S.C. § 2282(a)(1).......................................................................24, 30

33 U.S.C. § 2282(a)(2)............................................................................31

33 U.S.C. § 2282(a)(4).......................................................................26, 31

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

33 U.S.C. § 2282(d) ...................................................................................30

33 U.S.C. § 2282a(f) ..................................................................................24

33 U.S.C. § 2282a(f)(1)(C) ........................................................................25

33 U.S.C. § 2282a(f)(2) ..............................................................................25

33 U.S.C. § 2282a(g) ..................................................................................25

33 U.S.C. § 2282b......................................................................................25

33 U.S.C. § 2282d......................................................................................24

33 U.S.C. § 2282e(a).............................................................................24, 30

33 U.S.C. § 2282e(d) ..................................................................................24

33 U.S.C. § 2283 (2000) .................................................................22, 23, 29

33 U.S.C. § 2283(4) ...................................................................................30

33 U.S.C. § 2283(d) ...............................................................................27, 31

33 U.S.C. § 2283(d)(1)...........................................................................24, 35

33 U.S.C. § 2283a(1) ..................................................................................24

33 U.S.C. § 2317(d)(4)(B) ..........................................................................27

33 U.S.C. § 2346........................................................................................24

33 U.S. § 2269(b)(3) ...................................................................................26

33 U.S. § 2282(c) ........................................................................................26

33 U.S. § 2295(c) ........................................................................................26

33 U.S. § 2313a(a) ......................................................................................26

33 U.S. § 2317(d)(4)(A)..............................................................................27

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

42 U.S.C. § 4332(2)(C)................................................................32

Pub. L. No. 106–541, 114 Stat. 257, Sec. 224 (2000) ............................................30

**Federal Regulations**

40 C.F.R § 1502.14 ........................................................................18

**Legislative Materials**

S. Rep. 99-126 (1985)....................................................................31

**Other Authorities**

*Adequate*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/adequate (last visited June 10, 2024)...........................44

CEQ, *Guidance on the Consideration of Past Actions in Cumulative Effects Analysis* (2005) ...................................................................11

*Conservation*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/conservation (last visited June 10, 2024).....................47

*Future*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/future (last visited June 10, 2024) ..............................30

Memorandum from Theodore Brown, U.S. Army Corps of Engineers, to Commanders, (Aug. 31, 2009), https://www.mvs.usace.army.mil/Portals/54/docs/navigation/SEIS/Library/SEIS%20History%20Documents/Corps%20Documents%20&%20Other%20Misc/Implementation_Guidance_for_Section_2036_of_WRDA_2007.pdf ..........36

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

## <u>INTRODUCTION</u>

National Wildlife Federation, Florida Wildlife Federation, and Apalachicola Bay and Riverkeeper ("Appellants") have dedicated decades to ensuring the Army Corps of Engineers' ("Corps'") compliance with our bedrock environmental laws. But the Corps has failed to reckon with the devastating environmental impact its operations are having, and will continue to have, on the Apalachicola ecosystem. This failure will reverberate for generations unless corrected by the Court.

Contrary to Appellees' characterization, this case is not about second-guessing technical assessments, "upsetting" the balance of project purposes, or dissatisfaction with an "exhaustive" process. It is about correcting foundational errors by the Corps that cannot be obscured by a process tainted by those errors, by the passage of time, or by the length of an Environmental Impact Statement ("EIS").

Appellees urge the Court to reject this appeal, lamenting the amount of time that has passed. But Georgia did not decry delay when its interests were harmed, instead vindicating its rights in this Court. Alabama too pursued its rights, only staying its appeal after reaching an agreement. And it is the Corps that for decades has failed to comply with federal law.

1

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

The Court should reverse and remand for the Corps to finally comply with the National Environmental Policy Act ("NEPA") (whether by supplementing the EIS or otherwise) and to provide a mitigation plan for known harms under the 2007 Water Resources Development Act ("WRDA"). The Court should also clarify the scope of the Corps' duties toward fish and wildlife conservation, as it did previously for water supply at Georgia's request, under the 1946 Rivers and Harbors Act ("RHA") and Fish and Wildlife Coordination Act ("FWCA").

## <u>ARGUMENT</u>

## I. The Corps Violated NEPA.

The Corps' NEPA analysis failed to adequately (1) assess impacts on the Apalachicola ecosystem; (2) assess impacts from its drought operations; (3) consider cumulative impacts; (4) consider reasonable alternatives; and (5) consider mitigation. Appellees do not address these arguments head on, instead pointing to other parts of the EIS. Their arguments fail.

### A. The Corps Relied on a Flawed Premise.

The Corps relied on a demonstrably false premise that "current operations" are having no meaningful impact on the Apalachicola ecosystem to conclude that continuing those, or similar, operations will also have no meaningful impact. Unable

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

to defend this fundamental flaw, Appellees direct the Court to other matters.

But significant record evidence demonstrates the significant harm the Corps' current operations have caused to the Apalachicola ecosystem. Doc. 37 at 36–38, 50–51.[1] Continuing the same or similar operations will amplify that harm, just like a chronically underwatered plant. A plant may endure underwatering for a time, but as it continues, the plant's soil dries and its leaves wilt. Continuing the "same" underwatering for years into the future will ultimately destroy it.

The Corps failed to provide any rational basis for this flawed premise or explain how it can be reconciled with the extensive conflicting evidence in the EIS and record. Doc. 37 at 47–54. *Accord City of Los Angeles v. FAA*, 63 F.4th 835, 850 (9th Cir. 2023) (no hard look where "analysis rested on an unsupported and irrational assumption").

Appellees claim there is simply not enough room to recite the EIS' lengthy impacts analyses but had 39,000 words collectively at their disposal to try. *Compare* Doc. 37 at 48 n.15, *with* Doc. 71 at 46–48. Instead, Appellees repeat the same conclusory assertions based on the same false premise. The fact is they cannot point

---

[1] Appellants cite to this Court's docket using Doc., cite to the lower court docket using N.D. Ga. Dkt., and pin cite the ECF page number.

3

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

to any analysis of impacts to *the Apalachicola ecosystem* because no such analysis exists.

Appellees argue that using current operations as the no action alternative ("NAA") and baseline is lawful. Doc. 71 at 43–46; Doc. 72 at 53–57. But that answers a different question. It has no bearing on whether the Corps took a hard look at the impacts of its current (baseline) operations and how continuing those or similar operations will impact the Apalachicola ecosystem. Doc. 37 at 48–54.

Staying on baseline, the Corps contends that the "Affected Environment" Section accurately describes all past impacts from its current operations. Doc. 71 at 43–46. But that too dodges the question of the Corps' assessment of future impacts. Moreover, the record belies these assertions. The Section acknowledged *some* past harm to the Apalachicola ecosystem, but omitted many other impacts that appear in the record without providing any explanation why. Doc. 37 at 50–54. *Contra* Doc. 71 at 45 (claiming Appellants failed to identify missing impacts or analysis).

Also without explanation, the EIS treats the harms it does identify as existing only in the past. The Corps does not account for how continuing current, or similar, operations will similarly harm the ecosystem *in the future*. The Corps articulates no reasonable basis to conclude that continuing operations will have a negligible impact

4

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

when those (or similar) operations have had a significant impact in the past. Even small incremental impacts build over time. *See O'Reilly v. All State Fin. Co.*, No. 22-30608, 2023 WL 6635070 (5th Cir. Oct. 12, 2023).

The Corps' request that the Court defer to its expert judgment on what the baseline contains, Doc. 71 at 44–45, is also misdirection. Moreover, unlike here, in the cases the Corps cites, the agency provided reasoned explanations for its conclusions. *Druid Hills Civic Ass'n v. Federal Highway Admin.*, 772 F.2d 700, 711 (11th Cir. 1985) (agency had rational basis, consistently applied methodology, and accounted for relevant considerations); *Vill. of Bensenville v. FAA*, 457 F.3d 52, 72 (D.C. Cir. 2006) (agency explained rejection of data); *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 196–97 (D.C. Cir. 1993) (agency explained decision).

The Corps argues that Appellants fail to wrestle with the data and analysis in the EIS, Doc. 71 at 47, which the Corps concedes relies on the assumption that flow measurements can substitute for an assessment of impacts to the environment, including wildlife. But the EIS articulates no rational basis for the assumption that flow data can act as a surrogate for an *impacts* assessment. Doc. 37 at 52–53. Indeed, the very analysis the Corps points to—flow measurements—fails to include

5

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

any assessment of the impact of those flows on the Apalachicola ecosystem. *Id.* at 49–53.

Appellants agree that flow is critically important; even small fluctuations in the amount and timing can cause significant harm to the Apalachicola ecosystem. Doc. 37 at 36–38. What the Corps failed to do here was analyze how *flow* would *affect the environment* moving forward. *Id.* at 52–53.

The Corps points to its "extra" analysis regarding salinity, Doc. 71 at 47–48. But that analysis is relevant only to the bay and a small segment of the river and also assumed that slight changes in salinity meant slight impacts on the environment. Moreover, the wildlife agencies found the studies lacking. ACF-18_00057599, at ACF-18_00058692–93 ("additional examinations are needed" to determine impacts on species; recommending complete analysis to include updated salinity model for predicting oyster mortality and growth).

The Corps also has no defense for its reliance on decades-old data to conclude that the Apalachicola Bay remained "productive" despite the Corps' operations. Doc. 37 at 52–53. Georgia's argument misses the mark by conflating apples (data on the ecosystem's productivity) with oranges (data on water flows and demand). Doc. 72 at 59 n.4. The Corps relied on apples (albeit old ones), not oranges, for its

6

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

productivity finding. That the oranges are more recent is therefore meaningless. Appellants have shown that there were more recent and relevant ecological studies in the record, Doc. 37 at 52–53, which the Corps ignored without explanation. *Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. CV 22-114-M-DWM, 2023 WL 5310633, at *12 (D. Mont. Aug. 17, 2023).

### B.     The Corps Failed to Analyze Drought Operation Impacts.

The Corps failed to explain how substantially altering the amount and duration of drought operations was only a "slight" change or how those changes would *impact the environment*. Doc. 37 at 54–58. Instead, the Corps relies on the same conclusory statements conflating the degree of operational change with impact on the environment. Doc. 71 at 49. NEPA requires more. *See City of N. Miami v. FAA*, 47 F.4th 1257, 1265 (11th Cir. 2022); *Pennaco Energy, Inc. v. U.S. Dep't of Interior*, 377 F.3d 1147, 1156 (10th Cir. 2004).

The Corps argues that operational similarities between the NAA and PAA— relating to ramping rates and minimum flow provisions—justify the agency's "slight change" conclusion. *See* Doc. 71 at 49. But the Corps fails to address its own table, which among other things shows that the PAA would trigger drought operations seven times more often and require these to last for more than twice as long. Doc.

7

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

37 at 54–55.  The Corps points to no explanation in the EIS as to how or why *these* changes are "slight."

Even if they were, the Corps still has no answer for the EIS' reliance on the same flawed premise to conclude that if operational changes are slight then so are any environmental impacts.  *See* ACF-18_00053976, at ACF-18_00054860.  *Grand Canyon Trust v. FAA*, 290 F.3d 339, 345 (D.C. Cir. 2002) (failure to analyze whether 2% increase in flights would create significant impacts).

The Corps cites *City of Oxford v. FAA*, 428 F.3d 1346, 1352 (11th Cir. 2005), to argue that the Court should defer to its technical conclusions as to flow and water quality changes.  Doc. 71 at 49.  But an agency cannot "fail[] entirely to consider an important aspect of the problem."  428 F.3d at 1352.  Here, the Corps failed to consider the impact of flow and water quality changes on the Apalachicola ecosystem, including wildlife.

The Corps touts the "Environmental Consequences" subchapter.  Doc. 71 at 51.  But the Corps can only point to two conclusory assertions that relate to the Apalachicola River.[2]  *See* ACF-18_00053976, at ACF-18_00054835–36 (despite

---

[2] The only other citation relates to West Point Lake levels which has no relevance here.  Doc. 71 at 51.

8

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

expecting adverse conditions for vegetation and wildlife in short-term, Apalachicola River would "endure"); *Id.*, at ACF-18_00054860 (single-sentence conclusion that extreme drought conditions are not expected to adversely impact fishery resources). The Corps provided no factual basis or analysis for either. *See* Doc. 37 at 57–58.

The Corps broadly claims that the PAA's drought operations will have a "slightly beneficial effect" to *the environment* but relies on a chart that summarizes effects on drought operations. Doc. 71 at 51 (citing ACF-18_00053976, at ACF-18_00054634). The Corps concedes that these slight benefits are to system *operations*, not environmental conditions. ACF-18_00053976, at ACF-18_00054072; Doc. 71 at 48. Nothing the Corps cites discusses the Apalachicola ecosystem.[3]

The Corps' reliance, Doc. 71 at 49–50, on the EIS' incomplete description of *historic* droughts and their impacts, current drought operations, and potential water management measures is also to no avail, Doc. 37 at 37–38. These do not support

---

[3] Appellants do not suggest the PAA "induce[s]" natural droughts, *contra* Doc. 71 at 52, but withholding more water upstream can harm downstream environments the same as a natural drought.

9

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

the Corps' conclusion that drought operational changes are slight and therefore will not meaningfully impact the environment.

The Corps' modeling of alternative drought regimes' impact on *the reservoir* is irrelevant. Doc. 71 at 50–51. That modeling does not evaluate the impacts to the *downstream environment* in the Apalachicola ecosystem.

## C.    The Corps Failed to Analyze Cumulative Impacts.

The EIS also contains no forward-looking analysis of the impact of the Corps' operations on the Apalachicola ecosystem, much less an analysis of the cumulative effects of those operations. Doc. 37 at 58–62. A "meaningful" cumulative impacts analysis, however, must identify the overall impact that can be expected if individual impacts are allowed to accumulate. *St. Johns Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 462 F. Supp. 3d 1256, 1282 (M.D. Fla. 2020).

Appellees' reliance on the Corps' aggregation of *past* impacts in its "Affected Environment" Section,[4] Doc. 71 at 53–57; Doc. 72 at 58, is not an analysis of *future* environmental impacts, particularly when that aggregation is incomplete, *see* Doc.

---

[4] While the Corps broadly claims that its consideration of cumulative impacts appears throughout the EIS, Doc. 71 at 54, 57, the Corps only cites the "Affected Environment" and "Cumulative Impact" sections.

10

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

37 at 52–53. Only a full and accurate analysis of past harms is "useful in illuminating or predicting" future effects. *See* CEQ, *Guidance on the Consideration of Past Actions in Cumulative Effects Analysis,* 1 (2005).

The Corps' citation to *Cascadia Wildlands v. Bureau of Indian Affairs*, 801 F.3d 1105 (9th Cir. 2015); Doc. 71 at 53, for their aggregation theory is unavailing. In *Cascadia*, the agency aggregated the effects of a reasonably foreseeable project into a baseline and then analyzed the impacts of the proposed action against that baseline. 801 F.3d at 1112–1113. Here, the Corps included *some* past effects (but no effects of reasonably foreseeable actions) into the baseline; erroneously characterized future changes as "slight;" used these purportedly slight flow changes as a proxy for environmental impacts; and summarily concluded impacts were negligible. The Corps provided no analysis of the "incremental impact" on the environment (including on the Apalachicola ecosystem, Doc. 37 at 51–52) that would result from its PAA when added to other past, present, and reasonably foreseeable actions. The EIS' discussion of historical reservoir development, historical and current water withdrawals, water planning, management, and conservation activities pursued by non-federal entities, *see* Doc. 71 at 55, does not meet this duty either.

11

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

Appellees tout the four-paragraph "Cumulative Impacts to Biological Resources" Section, *id.* at 55–56; Doc. 72 at 35–36, but that section contains only conclusory assertions about Apalachicola Bay, Doc. 37 at 59–61. Appellees point to no rationale supporting the Corps' conclusory assertion that the estuary had remained productive (relying only on decades-old studies) and that current operations were not adversely impacting the bay (using slight changes in flow as a proxy for no environmental impact). *Id.* at 52, 60–61. The Corps' reliance on its modeling of flows in the bay, Doc. 71 at 56, fails because it does not analyze the impacts of those flows on fish and wildlife. The Section does not even mention the rest of the Apalachicola ecosystem, on which fish and wildlife also rely.

The Corps incorrectly asserts that *Northwest Environmental Advocates v. National Marine Fisheries Service*, 460 F.3d 1125, 1140 (9th Cir. 2006), holds that if a proposed action has no or negligible impacts compared to the NAA, then extensive cataloging of past actions is not required. Doc. 71 at 56. But there, cataloguing past impacts was not required because the agency had multiple studies that supported its conclusion, and its analysis included historical data regarding past projects. 460 F.3d at 1140. Here, the Corps only recited some past environmental impacts and washed its hands of any responsibility to analyze future effects.

12

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

Appellees ask the Court to give substantial deference to the Corps' decisions on the "extent of inquiry and the appropriate level of explanation." Doc. 71 at 54; Doc. 72 at 58–59. The Corps argues that the degree of detail about past effects depends on the degree the data is useful. Doc. 71 at 54. But neither of these general propositions can apply here, because the required analysis of impacts to the Apalachicola ecosystem was never undertaken.

Nor do other cases cited by Appellees aid their argument. Instead, they show that the Corps' failure to include past impacts in an analysis is unreasonable given the obvious relevance those impacts have to informing how continuing operations will impact the environment. *See* Doc. 37 at 59–61; *Lands Council v. Powell*, 395 F.3d 1019, 1027 (9th Cir. 2005) (EIS should have discussed environmental impact from past projects on individual basis since they may "have informed analysis about alternatives presented for the current project."). These cases also make clear that a "meaningful" cumulative impacts analysis must identify the overall impact expected if the individual impacts are allowed to accumulate. *St. Johns Riverkeeper*, 462 F. Supp. 3d at 1282. *See also* N.D. Ga. Dkt. 224 at 66–67. That is missing here.

Georgia's assertion that the PAA "might well reduce overall cumulative harms" because it does not require new construction of reservoirs, Doc. 72 at 60, is

13

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

speculative at best, *see* N.D. Ga. Dkt. 219 at 27 n.10.  None of the alternatives the Corps considered involved a new reservoir, *see* ACF-18_00053976, at ACF-18_00054052, so there is no basis to claim that the Corps' choice was superior to a theoretical alternative.

### D.    The Corps Unlawfully Rejected Reasonable Alternatives.

The Corps violated NEPA by (1) refusing to consider water management alternatives ("WMA") that would satisfy the project's purpose and needs; and (2) rejecting reasonable alternatives based on a mischaracterization.  Doc. 37 at 62–70.  Appellees defend *other* alternatives the Corps considered and incorrectly argue that the Corps can lawfully reject reasonable alternatives out of hand.

### 1.    The Corps Rejected Reasonable WMAs.

NEPA requires a "thorough consideration of all appropriate methods of accomplishing the aim of the action." *Env't Def. Fund v. U.S. Army Corps of Eng'rs*, 492 F.2d 1123, 1135 (5th Cir. 1974).[5]  But here, the Corps rejected WMAs, other than the NAA and PAA, that would accomplish the Corps' aims.    ACF-

---

[5] *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent decisions by Fifth Circuit prior to October 1, 1981).

14

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

18_00053976, at ACF-18_00054436–58, ACF-18_00054470.[6]  The Corps did so

without saying whether any of the rejected alternatives were "too remote,

speculative, or … impractical or ineffective."  *See Colo. Env't Coal. v. Dombeck*,

185 F.3d 1162, 1174 (10th Cir. 1999).  The Corps thus failed to consider the effects

of all (or even several) reasonable alternatives.

The Corps claims discretion to consider only a "subset of feasible

alternatives," Doc. 71 at 59.[7]  But courts uphold an agency's rejection of alternatives

where these would *not* meet the project's purpose and need.  *See N. Buckhead Civic

Ass'n v. Skinner*, 903 F.2d 1533, 1542–43 (11th Cir. 1990); *Citizens for Smart

Growth v. Sec'y Dep't of Transp.*, 669 F.3d 1203, 1209, 1212–13 (11th Cir. 2012);

*N. Miami*, 47 F.4th at 1268; *Nat'l Wildlife Fed'n ("NWF") v. U.S. Army Corps of

Eng'rs*, 75 F.4th 743, 755–758 (7th Cir. 2023); *Fla. Keys Citizens Coal., Inc. v. U.S.

Army Corps of Eng'rs*, 374 F. Supp. 2d 1116, 1151–52 (S.D. Fla. 2005).[8]  As

---

[6] The Corps claims it considered "nine distinct alternatives," Doc. 71 at 57, but they were comprised of only two WMAs, *see* N.D. Ga. Dkt. 219 at 28–30.

[7] Georgia's reliance on a repealed regulation that was not in effect at the time of the Corps' action is misplaced.  Doc. 72 at 47, 49 (citing 40 C.F.R. § 1502.14(f) (2020)).

[8] Appellees' reliance on *Holy Cross Wilderness Fund v. Madigan*, 960 F.2d 1515, 1528 (10th Cir. 1992), is misplaced, since the Corps did not reject the WMAs as "speculative."

15

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

Georgia stated, "[w]hether an alternative is 'reasonable' turns on whether the alternative will satisfy the agency's objectives." Doc. 72 at 48. Appellees cite no case upholding an agency's rejection of alternatives that the agency acknowledged would meet its objectives, as was the case here. *Cf. NWF*, 75 F.4th at 755.

The Corps fails to point to any explanation for rejecting *these* reasonable WMAs. *See* ACF-18_00053976, at ACF-18_00054436–58; *cf. Druid Hills*, 772 F.2d at 713 (explained rejection); *Tongass Conservation Soc'y v. Cheney*, 924 F.2d 1137, 1141–42 (D.C. Cir. 1991) (rejected alternative not feasible). Instead, the Corps points to its rejection of *different* alternatives. Doc. 71 at 58–59 (citing ACF-18_00053976, at ACF-18_00054477, ACF-18_0054423–70, ACF-18_00054397). Having articulated no reasoned basis for rejecting the other WMAs, the Corps had a duty to assess their impacts.

Georgia cites the Corps' ranking of alternatives as justification for rejecting these WMAs. Doc. 72 at 50–51. But the Corps' ranking did not render any of the alternatives unfit to meet the project's purpose and need. The ranking system was therefore insufficient to justify the rejection of reasonable alternatives from consideration.

16

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

Georgia also fails to acknowledge that the ranking system was heavily criticized by the Corps' own peer reviewers and USFWS as arbitrarily excluding alternatives that should be considered. ACF-00078413, at ACF-18_00078447 (ranking made it unclear whether "superior alternative" was rejected); ACF-18_00057599, at ACF-18_00058486–94 (ranking overemphasized minor differences between alternatives, inadequately assessed fish and wildlife conservation, and ignored modeling uncertainties); ACF-18_00049304, at ACF-18_00049304 (proper methodology would lead to environmentally preferable alternative).

Georgia argues that the Corps could ignore USFWS' concerns, Doc. 72 at 50–51, but cites cases where agencies had reasoned basis to do so. *E.g.*, *Bair v. Cal. Dep't of Transp.*, 982 F.3d 569, 579 (9th Cir. 2020). Here, the Corps defended its approach only as "simplistic and transparent," ACF-18_00057599, at ACF-18_00058487, disclosing that it had already sent its preferred alternative "up the chain" and that changing course would take too long. *Id.* None of these claims addressed USFWS' concerns or provided a reasonable basis to ignore them.

17

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

Georgia claims that two alternatives is enough, Doc. 72 at 49, but the number of alternatives is not the issue; the Corps' failure to provide a basis for rejecting reasonable WMAs is.

### 2. The Corps Failed to Consider Ecologically Sound Alternatives.

The Corps also arbitrarily mischaracterized and then rejected ecologically beneficial alternatives. *Cf. Env't Def. Fund*, 492 F.2d at 1135; 40 C.F.R § 1502.14. Appellants, USFWS, and EPA proposed an alternative that would incorporate *some level* of natural releases to the Apalachicola ecosystem. Doc. 37 at 67–69. The Corps identified this alternative as "Seasonably Varying Baseflows" but rejected it on the basis that "match[ing]" natural flows would adversely affect flood control. ACF-18_00053976, at ACF-18_00054427–28. By transforming a request for "some" natural releases into "matching" natural flows, the Corps created a strawman to knock down.

The Corps defends rejecting the separate "small pulses" alternative, Doc. 71 at 60–61 (citing ACF-18_00053976, at ACF-18_00054428), but cannot plausibly defend rejecting a reasonable alternative by pointing to its rationale for rejecting something else entirely. The Corps' "small pulses" proposal only addressed fish

18

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

immediately downstream from dams, not fish and wildlife in the Apalachicola ecosystem. ACF-18_00053976, at ACF-18_00054428.

Georgia suggests the Corps adequately considered "seasonably varying baseflows" because it committed to studying, as part of its ESA compliance, pulses to support Gulf sturgeon. Doc. 72 at 51 (citing ACF-18_00053976, at ACF-18_00054864). But this is an even narrower measure, focused on a single species and compliance with an entirely different statute.

### E.    The Corps Failed to Adequately Consider Mitigation.

The Corps failed to adequately consider mitigation in two ways. Doc. 37 at 70–72. First, having failed to acknowledge harm to the Apalachicola ecosystem, the Corps failed to consider mitigation to minimize that harm. Second, the Corps failed to consider mitigation for acknowledged harm to reaches of the Chattahoochee River, referring instead only to potential changes to wastewater permits.

Appellees contend that NEPA does not require a mitigation plan, Doc. 71 at 63; Doc. 72 at 60, but an EIS must "contain a detailed discussion of possible mitigation measures," *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 351–52 (1989), including an analysis of "how effective the mitigation measures would be," *Neighbors of Cuddy Mountain v. U.S. Forest Serv.*, 137 F.3d 1372, 1381

19

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

(9th Cir. 1998). *Accord Ky. Riverkeeper, Inc. v. Rowlette*, 714 F.3d 402, 413 (6th Cir. 2013) ("some documented information" needed to support mitigation finding); *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 515–16 (D.C. Cir. 2010) (mitigation measures outlined); *Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*, 46 F. Supp. 3d 1254, 1321 (M.D. Fla. 2014), *aff'd sub nom. Nat'l Parks Conservation Ass'n v. U.S. Dep't of the Interior*, 835 F.3d 1377 (11th Cir. 2016) (EIS that merely states mitigation measures without assessing their effectiveness is "useless").

As to the Chattahoochee, the Corps' "mere listing" and "perfunctory description" of potential future wastewater permit changes is insufficient to meet this standard.[9] *See Cuddy Mountain*, 137 F.3d at 1380. It does not constitute a detailed discussion of possible mitigation measures, provide any analysis of how effective those measures might be, or constitute documentation to support a finding on mitigation.

---

[9] Georgia's comments on the EIS, Doc. 72 at 61, are irrelevant to the Corps' duty to discuss and analyze mitigation. The Corps did not adopt that analysis as its own. *See* ACF-18_00049332, at ACF-18_00049345.

20

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

The Corps contends that it *generally* considered mitigation, Doc. 71 at 63–64, but points to just two unconvincing occasions.  First, the Corps says it considered measures to minimize incidental take, *id.* at 64, but minimizing take is an ESA requirement limited to protected species, and falls far short of meeting NEPA's broader requirements, ACF-18_00053976, at ACF-18_00054926.  Second, the Corps points to fish spawning and passage procedures, Doc. 71 at 64, but the Corps only considered maintaining current procedures.  The Corps cites no case for the untenable proposition that where a proposed action increases harm, the Corps may rely on current operations to mitigate that harm.

## II.    WRDA's Mitigation Requirement Applies to "Any Report."

Appellees ask the Court to rely on "clues," *see* Doc. 72 at 64, rather than plain meaning to interpret Section 2283(d)(1), Doc. 37 at 72–84.  But clues that stray from the ordinary meaning of statutory text are not interpretive clues at all.  *Niz-Chavez v. Garland*, 593 U.S. 155, 162–64 (2021).

That the Corps recently persuaded another Circuit to stray from the plain meaning into a "better reading" of the provision, *NWF*, 75 F.4th at 753 (recognizing that plain meaning of "report" includes an EIS, but adopting contrary view), does not compel a different result, *see CSX Corp. v. United States*, 18 F.4th 672, 683 (11th

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

Cir. 2021) (rejecting interpretation Fifth Circuit found "more reasonable" in favor of plain meaning). This Court's precedents require application of the language Congress enacted. The district court's contrary interpretation must therefore be reversed.

## A.    The Plain Meaning of "Any Report" Includes an EIS.

Appellees' argument that the term "any" report means "only" reports to Congress, Doc. 71 at 65–66; Doc. 72 at 64–65; Doc. 73 at 47–51, defies the plain meaning of the statute. Appellees' preferred interpretation would require the Court to opine that what Congress *intended* is different from what Congress *said*. But the Court must "presume that Congress said what it meant and meant what it said." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001).

A close reading of Section 2283(d) shows that the words "to Congress" do not modify the word "report" at all. Instead, Congress' original language directed that the Corps "shall not submit any proposal for the authorization of any water resources project to Congress" unless the "report" containing that proposal provided a mitigation plan where required. 33 U.S.C. § 2283 (2000). The terms "to Congress" therefore modify "proposal," not "report." Congress' 2007 amendment directed that the Corps "not select a project alternative in any report" unless that report contains

22

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

a mitigation plan where required. *Id.* (2007). There, Congress made no mention of congressional authorization, not as to the report selecting project alternatives nor the selection of alternatives. And because the words "to Congress" do not modify the word "report" in either clause, the subsequent use of the terms "such report" is also *not* modified by the words "to Congress." *Contra* Doc. 71 at 65.

It is beyond dispute that the plain meaning of "report" covers an EIS. Even the decision on which Appellees overwhelmingly rely said so. *See NWF*, 75 F.4th at 753 ("report" covers EIS because it is a "report to the public assessing the environmental impact of the regulating works project and different ways of moving forward with the project"). Congress could have defined "report" otherwise but did not. *Cf. Van Buren v. United States*, 593 U.S. 374, 387 (2021). And the plain meaning is clear. Doc. 37 at 74–75. In this Circuit, that is the end of the inquiry. *In re Appling*, 848 F.3d 953, 960 (11th Cir. 2017).

**B.     Statutory Context Supports the Plain Meaning.**

Appellees ask the Court to follow the Seventh Circuit's approach, Doc. 71 at 64; Doc. 72 at 64; Doc. 73 at 44, which eschewed the plain meaning of "report" in favor of "other clues" to arrive at what it deemed the "better reading." *NWF*, 75 F.4th at 743, 750–51, 753. But the Court should not "travel so far in the search for

23

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

the meaning of the lawmakers, beyond the borders of the statute." *United States v. Great Northern Ry. Co.*, 287 U.S. 144, 154 (1932); *Appling*, 848 F. 3d at 960.

To interpret Section 2283(d)(1), Appellees urge the Court to look instead at different provisions that expressly involve reports to Congress. For example, Appellees cite provisions of Sections 2282, 2282a, and 2282e which relate to activities requiring congressional authorization.[10] Doc. 71 at 66–67; Doc. 72 at 65; Doc. 73 at 48–49. Appellees also cite provisions that explicitly require reports to Congress on specific matters, *see* 33 U.S.C. § 2282d (annual "Report to Congress on Future Water Resources Development"); *id.* § 2283a(1) (requiring status reports to Congress for projects in construction requiring mitigation). Doc. 73 at 49. And Appellees cite Section 2041, Doc. 73 at 50, which simply requires that reports to Congress be submitted also to the Library of Congress, 33 U.S.C. § 2346.

---

[10] Section 2282(a)(1) requires a feasibility report for "any water resources project-related study ... that results in recommendations ... that requires specific authorization by Congress." 33 U.S.C. § 2282(a)(1). Section 2282a(f) describes the contents of "[f]easibility and other studies and assessments" to be submitted for congressional authorization. *Id.* § 2282a(f). *See id.* § 2282e(a), (d) (proposed changes to authorized projects ("post-authorization" changes) must be submitted to Congress).

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

It is tautological to say that because reports for activities requiring congressional authorization are submitted to Congress therefore all reports are ipso facto reports to Congress. If "report" only meant reports to Congress, it would have been unnecessary for Congress to specify in *every such case* which reports must be submitted to Congress. When Congress means reports to Congress, it has said so.

Appellees fail to mention Section 2282b, even though that provision is titled "Submission of reports to Congress." *Id.* § 2282b. That provision explicitly refers to "Chief of Engineers Report[s]," a sub-set of "reports" that go to Congress because they make recommendations that require congressional authorization. *Id. See also id.* § 2282a(f)(1)(C), (f)(2), (g) (addressing "Chief of Engineers Report[s]").

The Corps' reliance on *United States v. Arizona*, 295 U.S. 174, 191 (1935), Doc. 71 at 65, is misplaced. That case stands for the unremarkable proposition that projects submitted for congressional authorization are based on recommendations from the Chief of Engineers, which are "based on examinations, surveys and reports." Notably, the case does not use the word "report" to refer only to reports to Congress. *Arizona*, 295 U.S. at 190 n.11 (describing survey report separately from report to Congress).

Congress' specific direction that certain "reports" be provided to Congress

25

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

belies the notion that *every* report mentioned in WRDA is provided to Congress. Appellees contend that the definition of a "feasibility report" as including any "associated [EIS]" demonstrates that Congress "distinguished" between a report and EIS.  Doc. 71 at 68 (citing 33 U.S.C. § 2282(a)(4)).  *See NWF*, 75 F.4th at 751.  But that definition does not pertain to "any" report, only to a "feasibility report," and merely describes the components of a feasibility report.  The definition of one type of report does not mean that other documents are not also reports.  Notably, the provision refers to EISs *and* mitigation plans, which is precisely what Appellants argue here: that mitigation plans are required for EISs.  33 U.S.C. § 2282(a)(4).

In fact, the broader context shows that Congress uses "report" in water resources provisions to mean reports to Congress *and* reports *not* to Congress.  But Appellees completely fail to acknowledge any of the water resources provisions where Congress used the word "report" to mean reports *not* submitted to Congress. *See* 33 U.S.C. § 2238(a)(3) (survey, engineering, and environmental reports for the Corps); *id.* § 2269(b)(3) (Corps' reports to Tribes); *id.* § 2282(c) (project reports for water resources studies that can be approved by Corps without congressional authorization); *id.* § 2295(c) (Corps' reports to states);  *id.* § 2313a(a) (Secretary may prepare reports leading to work under *existing* authorities *or* "to

26

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

recommendations for authorizations"); *id.* § 2317(d)(4)(A)–(B) (reports to Chief of Engineers versus to Congress).

The Seventh Circuit acknowledged only *one* use of the word report that does not involve a report to Congress, Section 2282(b)(5), but dismissed its relevance because it was enacted "long after" the provision at issue here. *NWF*, 75 F.4th at 750. But that is not true of other provisions, such as Section 2313a, enacted in 1996, and Section 2317, enacted in 1990.

The Seventh Circuit also did not address the fact that Congress explicitly enumerates EISs and RODs under the heading "Report Repository" in Section 2346—a provision enacted *the same year* as the amendment to Section 2283(d). *See* 33 U.S.C. § 2283(d). Appellees' argument that specifically listing EISs and RODs in Section 2346 would be meaningless if those documents also constituted "reports," *see e.g.,* Doc. 71 at 68, 70; Doc. 72 at 50, nonsensically ignores the remainder of the provision, which lists "final reevaluation report," "final post-authorization report," and "report to Congress prepared by the Corps of Engineers" separately, all of which are reports.[11] This only confirms that the word "report" does not have a narrow

---

[11] The Seventh Circuit opined that if EISs were "reports," Congress would have not separately enumerated them along with "report[s] to Congress." *NWF*, 75 F.4th at

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

meaning, which is why Congress listed several types of reports under the "Report Repository" heading.

Thus, Appellees' argument that the term has a unique "technical" meaning that must be given "the same" meaning throughout the statutes holds no water. Doc. 71 at 67; Doc. 73 at 49. *Cf. SEC v. Levin*, 849 F.3d 995, 1002–03 (11th Cir. 2017) (relying on consistent use of phrase "failure to comply" in regulations to discern meaning); *see United States v. Obando*, 891 F.3d 929, 934 (11th Cir. 2018) (considering whether "flying a flag" in maritime context differs from ordinary meaning).

For the same reason, the Court must give effect to Congress' use of the phrase "to Congress" in Section 2283(d)'s pre-amendment language but its omission in the amendment. *See CBS Inc.*, 245 F.3d at 1226 (Congress' clear ability to modify term and "fact that it did not do so in the disputed phrase, indicates that it had no intention to so limit the term"). This Circuit's caselaw forecloses Appellees' illogical argument that the absence of limiting language means the same thing as its presence.

---

751. But by the same token, if "report" *only* meant reports to Congress, it would have been superfluous for Congress to refer to "reports *to Congress*" at all. The fact that there are many types of reports listed under "Report Repository" confirms that Congress used the term broadly.

28

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

*See Pinares v. United Techs. Corp.*, 973 F.3d 1254, 1261–62 (11th Cir. 2020) (citing *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015) ("Where Congress knows how to say something but chooses not to, its silence is controlling.")); *cf. NWF*, 75 F.4th at 751 (taking as a "textual sign" that Congress meant report "to Congress" both where it said so and where it did not).

## C.    Appellees' Reading Would Render the Amendment Superfluous.

Appellees' interpretation of the provision would render the amendment superfluous.  Doc. 37 at 76–80.  The original language already covered reports to Congress for projects requiring congressional authorization.  Appellees' interpretation would require inserting language into both the original and amended text.  The Court is not authorized to re-write Section 2283 to conform to Appellees' view.  *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d at 1228 ("We cannot add to the terms of [the] provision what Congress left out.").

Appellees, for example, claim the original language applied only to "new" project requests, Doc. 71 at 69, but the provision makes no reference to "new" projects, 33 U.S.C. § 2283 (2000).  Instead, Congress said the requirement applied to "any" proposal for the authorization of "any" water resources project.  *Id.*  The requirement already applied to feasibility reports (which include reevaluation

29

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

reports), for example, because these involve recommendations for "a project or the operation of a project ... that require[] specific authorization by Congress." *Id.* § 2282(a)(1), (4). The requirement also applied to proposed changes to an existing project (after its original authorization) when the modification required congressional authorization. *Id.* § 2282e(a), (d). Thus, the original language covered not only authorization of *new* projects, but also authorization of modifications to existing projects.

The WSPs argue that the heading of Section 2283(d) ("Mitigation plans as part of project proposals") suggests that "report" refers to reports to Congress "requesting authorization or reevaluation." Doc. 73 at 51 n.5. But that heading was enacted in 2000. WRDA, Pub. L. No. 106–541, 114 Stat. 257, Sec. 224 (2000). The WSPs' reading thus confirms that Section 2283(d)(1), as originally enacted, covered proposals to Congress for both authorization *and* reevaluation.

The Corps relies on a 1985 statement from the legislative history describing the original language as applying to "all future proposals for water resources," Doc. 71 at 69. But "future" is a temporal notion. *Future*, Merriam-Webster Dictionary[12]

---

[12] https://www.merriam-webster.com/dictionary/future (last visited June 10, 2024).

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

(something "that is to be," relating to a "time yet to come"). Indeed, Congress provided that the original Section 2283(d)(1) would only apply to project proposals submitted to Congress *after* November 17, 1986. S. Rep. 99-126, at 24–26 (1985). Congress said nothing about limiting the provision to "new" projects. *See id.* at 10 ("new on-going mitigation authority … will be used at older Corps projects").

Appellees argue that the amendment expanded the mitigation requirement only to include reevaluation reports that would change an "authorized" project. Doc. 71 at 69; Doc. 72 at 66–67; *NWF*, 75 F.4th at 753. But the amendment says nothing about "re-evaluation reports," "changes" or "already-authorized" projects. 33 U.S.C. § 2283(d). Instead, Congress plainly said that the Corps shall not select a project alternative in "any" report unless it complies with the mitigation plan requirement. *Id.*

Appellees' reading is also implausible because project proposals to Congress already required the selection of a project alternative as a matter of law. *See* Doc. 37 at 77. This is not only true under NEPA, as the WSPs suggest, Doc. 73 at 47, but also under water resources development statutes. For example, feasibility reports (which include reevaluation reports by definition) must describe both the recommended plan *and* alternative plans not selected. 33 U.S.C. § 2282(a)(2); *id.*

31

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

§ 2282(a)(4).  It therefore would have added nothing for Congress to amend the mitigation provision as applying to reports to Congress that select a project alternative.  *See United States v. Taylor*, 596 U.S. 845, 857 (2022) (Court will "not lightly assume Congress adopts two separate clauses in the same law to perform the same work").

The Corps urges the Court to rely on NEPA's use of "report" as distinct from "statement," Doc. 71 at 68.  *Cf.* Doc. 73 at 47 (WSPs objecting to NEPA's relevance)).  But NEPA itself contemplates that a "report" may relate to "proposals for legislation" (i.e., reports to Congress) *and* "other major Federal actions" (which may or may not involve Congress).  42 U.S.C. § 4332(2)(C).  That a "legislative" EIS is included in a report to Congress simply states the obvious.  Doc. 71 at 68 (citing 40 C.F.R. § 1506.08).

### D.    Legislative History Does Not Support Appellees' Reading.

Appellees' reliance on an imagined legislative "compromise" fares no better.  Citing differences between Senate, House, and Conference Committee bills, the Seventh Circuit accepted Appellees' argument that the plain reading of "report" would "read into the statute language that Congress expressly rejected."  *NWF*, 75

32

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

F.4th at 751–52.  But there is no evidence that Congress "expressly rejected" anything.

That language in one bill version "was not adopted" does not affect statutory interpretation where the "legislative history [is] silent as to why this language was not adopted."  *See United States v. DBB, Inc.*, 180 F.3d 1277, 1283 n.8 (11th Cir. 1999).  "Congress could have decided that the [language] actually enacted had the same meaning."  *Id.*  Here, there is nothing in the record to suggest that Congress adopted the broad term "report" for any reason other than to encompass all the different types of reports listed in the Senate bill.  *See DBB*, 180 F.3d at 1283 n.8; *cf. Tanner v. United States*, 483 U.S. 107, 122–25 (1987) (finding "uncommon clarity" as to congressional intent where extensive, explicit legislative history showed that "Congress specifically understood, considered, and rejected" different version).

By contrast, in *Chickasaw Nation v. United States*, 534 U.S. 84, 91 (2001), the language at issue was considered and deleted by the same committee that proposed the bill.  In *INS v. Cardoza-Fonseca*, 480 U.S. 421, 436 n.17 (1987), Congress rejected language that mirrored one provision and instead chose language that mirrored another.

33

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

In amending Section 2283(d), Congress sought to broaden the mitigation plan requirement wherever a Corps project causes environmental harm.  The legislative history confirms this by stating that the amendment would apply to "all new studies" *and* "any other project" that must be re-evaluated "for any reason."  Doc. 73 at 53 (citing 153 Cong. Rec. S11974-002, S11981 (daily ed. Sept. 24, 2007) (Statement of Senator Boxer) (sponsor report confirmed by every conferee in both Chambers)).  Appellees treat that language as only describing "reevaluation *reports*" or other reports requiring congressional authorization, but that limitation appears nowhere in the sponsor's statement or statutory language.

Here, there can be no dispute that the EIS constituted a new study for the re-evaluation of the ACF River Basin project "for any reason," namely to update the WCM.  Appellees' reading, however, would mean that this and other massive Corps projects re-evaluated "for any reason," but not requiring further congressional authorization, would not have to comply with WRDA's mitigation requirements.  Nothing in the record suggests Congress intended such a bizarre result.

**E.    Congress Has Not Acquiesced to the Corps' Interpretation.**

Appellees' theory of "congressional acquiescence," *id.* at 54–55 & n.7, also fails.  There is *no* evidence that Congress has considered or ratified the Corps'

34

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

informal interpretation of Section 2283(d). *Cf. CFTC v. Schor*, 478 U.S. 833, 846–47 (1986) (affirming agency interpretation "[i]n view of the abundant evidence that Congress both contemplated and authorized" it); *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 381–82 (1969) (affirming agency interpretation where Congress explicitly affirmed and ratified it); *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 822 (11th Cir. 1998) (Congress adopted agency interpretation where Senate gave unanimous consent to printing regulations).

That Congress has passed subsequent WRDAs to authorize specific water resources projects (as it routinely does), Doc. 73 at 54–55 & n.7, does not show that Congress has "revisit[ed]" the provision at issue here. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 185–86 (1994) (no acquiescence to prior judicial constructions where Congress had "not reenacted" provision at issue although it had several times amended other provisions).

## F.    The Corps' Guidance Deserves No Deference.

The Corps' informal and conclusory interpretation is not persuasive because it re-writes the statutory language. Doc. 37 at 85. The statute requires that the Corps "not select a project alternative in any report, unless such report [complies with the mitigation requirement]." 33 U.S.C. § 2283(d)(1). The informal agency guidance,

35

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

by contrast, states that the Corps must "ensure that any report, *submitted to Congress for authorization,* shall not select a project alternative unless such report [complies with the mitigation requirement]." Memorandum from Theodore Brown, U.S. Army Corps of Engineers, to Commanders, at 1 ¶ 1.a. (Aug. 31, 2009) (emphasis added).[13]

The statutory language does not provide the qualifier that the Corps added and does not refer to Congress or to project authorization at all. The Corps is not free to re-write the statute Congress has enacted. *Cf. La. State v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 587–88 (5th Cir. 2016) (approving agency interpretation where Corps chose among options expressly authorized by Congress for certain projects and relied on catch-all provisions for others).

## III.  The District Court Erred in Denying Leave to Amend.

The district court erred in denying Appellants' motion to amend the complaint by (1) mischaracterizing their proposed FWCA claim; and (2) misapplying this Court's ruling in *In re MDL-1824 Tri-State Water Rights Litigation*, 644 F.3d 1160 (11th Cir. 2011), to Appellants' proposed RHA claim. N.D. Ga. Dkt. 160 at 4–11. Appellees' slew of arguments to the contrary fail.

---

[13] https://www.mvs.usace.army.mil/Portals/54/docs/navigation/SEIS/Library/SEIS%20History%20Documents/Corps%20Documents%20&%20Other%20Misc/Implementation_Guidance_for_Section_2036_of_WRDA_2007.pdf.

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

### A.    The Motion Was Timely.

Appellants timely filed their motion consistent with the parties' agreed scheduling order, which the Court adopted.    N.D. Ga. Dkts. 114, 148.    The scheduling order expressly provided a deadline for Appellants to seek leave to amend *after* the court ruled on the WSPs' July 16, 2018, Motion for Partial Judgment on the Pleadings.    N.D. Ga. Dkts. 114, 148.    Appellants' motion was filed promptly after the court's May 22, 2020, decision on that motion. N.D. Ga. Dkt. 152.    Arguments that Appellants' motion was untimely, Doc. 71 at 75; Doc. 73 at 76, therefore bear no fruit.    *City of Charleston v. Hotels.com, LP*, 487 F. Supp. 2d 676, 679 (D.S.C. 2007) (where motion filed "within the time prescribed by the scheduling order," opposing parties "cannot claim that the Motion[] [was] untimely."); *Floyd v. E. Airlines, Inc.*, 872 F.2d 1462, 1490 (11th Cir. 1989), *rev'd, on other grounds*, 499 U.S. 530 (1991) ("mere passage of time" insufficient).

Appellees cite no authority for their contention that the scheduling order does not determine timeliness.    Doc. 71 at 75 n.4; Doc. 73 at 76.    Indeed, a scheduling order "control[s] the subsequent course of the action unless modified."    *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998); *cf. Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000) (plaintiffs moved to

37

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

amend eight months after scheduling order deadline).

The crux of Appellees' argument is that Appellants should have pled all conceivable bases for relief at the outset. Doc. 71 at 72–75; Doc. 73 at 74–76. But Appellants' original theory, based on Section 661 of the FWCA, reasonably relied on the Corps' position in the EIS that (1) fish and wildlife must be given equal consideration because (2) conservation was an authorized project purpose pursuant to the FWCA. ACF-18_00053976, at ACF-18_00054166. After the court sustained the Appellees' position that Section 661 of the FWCA imposed no duty on the Corps, Appellants promptly moved to amend. Appellants reasoned that since the Corps admitted the applicability of the FWCA, then another provision of the statute (Section 663) must govern the Corps' actions. And since the Corps admitted fish and wildlife conservation was entitled to equal consideration, Appellants reasoned that the statutory basis for that duty must arise from the RHA. Appellants thus sought leave to amend to conform to the district court's ruling.

Courts have repeatedly allowed plaintiffs to amend after the court has ruled on a motion for judgment on the pleadings, and even after summary judgment, so that plaintiffs may add a new theory based on facts alleged in the original complaint. *See Mulligan v. Marshalls of Ma, Inc.*, No. 1:08-CV-573, 2009 WL 10664906, at *3

38

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

(N.D. Ga. Oct. 30, 2009); *Covia P'ship v. Nw. Airlines, Inc.*, No. 93 C 3008, 1998 WL 102705, at \*5 (N.D. Ill. Mar. 2, 1998).

Appellees argue that Appellants "abandoned" any Section 663 claim by not raising it in response to the motion for judgment on the pleadings.  Doc. 71 at 72–75; Doc. 73 at 61–62.  But Appellants could not have defended against that motion by raising a claim not pled.  N.D. Ga. Dkt. 158 at 5–7.  Moreover, the scheduling order plainly contemplated seeking amendment *after* the court ruled.

None of the cases Appellees cite required a plaintiff to plead all conceivable bases for relief at the outset or to request amendment before the court ruled on the adequacy of the claims pled.  Cases where plaintiffs delayed for a year or more after a court ruled their claims defective are inapposite.  *Andrx Pharm., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236–37 (11th Cir. 2005);[14] *Smith v. Duff Phelps, Inc.*, 5 F.3d 488, 494 (11th Cir. 1993); *Florida Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1256 (S.D. Fla. 2004), *aff'd*, 470 F.3d 1036 (11th Cir. 2006) (plaintiff moved to amend after five years and after appellate court affirmed rejection of plaintiff's claims).  Nor is *Maynard v. Board of Regents* relevant since,

---

[14] *See* N.D. Ga. Dkt. 158-1 at 9–10 (district court decision outlining these facts).

39

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

there, the motion was not filed in accordance with the scheduling order and the defendants would have been prejudiced.  342 F.3d 1281, 1287 (11th Cir. 2003).

Without evidence of prejudice to the defendants or bad faith by the plaintiffs, the "lengthy nature of litigation" alone does not justify denying leave to amend. *Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001).  Prejudice "is the primary basis for denying a motion to amend the pleadings." *Green v. Am. Broad. Cos., Inc.*, 647 F. Supp. 1359, 1367 (D.D.C. 1986).  *Accord Bryant*, 252 F.3d at 1164.

But Appellees have failed to demonstrate prejudice.  The proposed amendments would not have required discovery, expansion of the administrative record, or modification of the summary judgment briefing schedule.  *See, e.g.*, *Mulligan*, 2009 WL 10664906, at \*3; *Jackson v. Fulton Cnty.*, No. 1:12-CV-0518, 2013 WL 12384279, at \*13 (N.D. Ga. Nov. 6, 2013); *Charleston*, 487 F. Supp. 2d at 681.  Amendment also would not have affected the Corps' operations while litigation proceeds.  It would simply have allowed an adjudication of the Appellants' claims on the merits.

The WSPs claim that amendment would be "unfair," Doc. 73 at 56, 62, because they would have preferred to address those claims while briefing their motion for judgment on the pleadings.  But they cite no authority to show that a

40

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

briefing preference constitutes prejudice.  Moreover, the WSPs addressed the claims in briefing the motion to amend, which turns on the same standard.  *United States v. Wood*, 925 F.2d 1580, 1581 (11th Cir. 1991).

### B.    The FWCA Claim is Legally Cognizable.

The Corps admitted that fish and wildlife conservation is an authorized project purpose pursuant to the FWCA.  N.D. Ga. Dkt. 67 at 21 ¶ 124.  Appellants' proposed FWCA claim was therefore not futile.[15]

Section 663 requires that whenever waters are "otherwise controlled or modified for any purpose whatever," "adequate provision consistent with the primary purposes … shall be made for the use thereof … for the conservation, maintenance, and management of wildlife resources thereof."  16 U.S.C. § 663(a). Appellants' proposed amendment stated a Section 663 claim because the Corps failed to adequately consider impacts to fish and wildlife, rejected reasonable alternatives before assessing their environmental impacts, failed to consider or provide mitigation for harms, and unreasonably ignored recommendations from USFWS as to fish and wildlife conservation (as distinct from ESA-protected

---

[15] Notably, the Corps did not argue below that Appellants' FWCA claim was futile.

41

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

species).[16] *Contra* Doc. 71 at 75 (claiming Appellants failed to identify inadequate provision for fish and wildlife); Doc. 72 at 68 (same); Doc. 73 at 57–58, 62 (same).

Georgia asks the Court to rule that the Corps' inclusion of "fish and wildlife" in its WMA ranking approach was sufficient to satisfy Section 663 as a matter of law. Doc. 72 at 68–69. But Georgia cites no authority for the bold proposition that a mere ranking system (heavily criticized by USFWS) that includes a column for fish and wildlife conservation constitutes "adequate provision" for conservation.

Georgia's argument that having fish passage and conservation measures ipso facto constitutes adequate provision for conservation of wildlife broadly, Doc. 72 at 68, also fails. The Corps did not consider *any* changes to its existing fish passage measures (which relate only to reservoir fish), ACF-18_00053976, at ACF-18_00054434, and failed to adequately address conservation measures USFWS proposed, ACF-18_00057599, at ACF-18_00058679.

---

[16] The WSPs contend 1400 pages of FWCA materials necessarily means the Corps complied with FWCA, Doc. 73 at 57–58, but those materials (which include multiple duplicates) show that the Corps repeatedly failed to adequately consider and address USFWS' concerns, *see, e.g.*, ACF-18_00057599, at ACF-18_00057819–20, ACF-18_00058139, ACF-18_00058208–09, ACF-18_00058487, ACF-18_00058770.

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

Georgia's argument that the PAA had negligible or even beneficial impacts, Doc. 72 at 68, relies on the same flawed premise and conclusions as the EIS. That the district court granted summary judgment to Appellees on *other* claims arising out of a specific requirement from a *different* statute does not render this claim futile. *Cf. L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020).

Appellees also argue that the claim is futile because Section 662 of the FWCA requires coordination with USFWS, which they claim is subsumed into NEPA compliance.[17] Doc. 72 at 69; Doc. 73 at 56–57. But the cases they cite address Section 662, not Section 663. *See, e.g., Tex. Comm. on Nat. Res. v. Marsh*, 736 F.2d 262, 267 (5th Cir.), *on reh'g*, 741 F.2d 823 (5th Cir. 1984).

The WSPs argue that Section 663 only applies when a project is "initially authorized and constructed." Doc. 73 at 63. But this ignores the provision's plain language, which requires adequate provision whenever water is "controlled or modified for any purpose whatever." 16 U.S.C. § 663(a). *See Nguyen v. United States*, 556 F.3d 1244, 1250 (11th Cir. 2009).

---

[17] Georgia also argues that the FWCA provides no cause of action, Doc. 72 at 69, but cannot dispute that the APA does. 5 U.S.C. § 704.

43

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

The WSPs also argue that the claim is futile because the Corps' actions must be "in accordance with general plans" approved by states. Doc. 73 at 63–64 (citing 16 U.S.C. § 663(b)). But Section 663(b) applies to the Corps' actions in waters *connected to* controlled waters, 16 U.S.C. § 663(a)–(b); here, the Corps' action is operation of controlled waters themselves. Even if Section 663(b) applied, Appellants state a valid claim because there is no requirement for state-approved plans, *cf.* Doc. 73 at 63, before the Corps must provide for conservation.

Appellees argue that there is no law to apply, *id.* at 65–66; Doc. 72 at 68, and the WPSs attempt to analogize this case with *South Dakota v. Ubbelohde*, 330 F.3d 1014 (8th Cir. 2003), Doc. 73 at 65–66. But *South Dakota* involved the Flood Control Act, which the court found granted the Corps discretion to manage waters for flood control and navigation. 330 F.3d at 1027. Even there, the "discretion [was] not unconstrained" because the Act "clearly provides some law to apply," even if it did not identify a method to determine whether the Corps' balancing of interests was correct. *Id.* The FWCA goes farther; it requires the Corps to *adequately* provide for fish and wildlife conservation. 16 U.S.C. § 663(a); *Adequate*, Merriam-Webster

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

Dictionary (meaning "sufficient for a specific need or requirement").[18]  The Corps

was therefore required to provide *sufficient* water for fish and wildlife conservation,

which it failed to do.

### C.    The RHA Claim is Legally Cognizable.

Appellants requested leave to amend to allege that fish and wildlife

conservation was due equal consideration as an original project purpose under the

RHA.  *See Tri-State Water Rights*, 644 F.3d 1160.

In *Tri-State Water Rights*, the Court relied on Paragraph 80 of the Newman

Report to hold that Atlanta water supply was an original project purpose because it

required minimum flows to Atlanta to the detriment of power generation, another

original project purpose.  644 F.3d at 1169, 1188.  That *same paragraph* also

requires minimum flows to "prevent damage to fish" to the detriment of power

generation.  ACF-18_00002704, at ACF-18_00002751.

The Court also relied on Paragraph 100, which despite including the term

"incidentally," listed original project purposes (flood control and water supply)

alongside fish and wildlife conservation.  *Id.*, at ACF-18_00002756; *Tri-State Water*

---

[18] https://www.merriam-webster.com/dictionary/adequate (last visited June 10,
2024).

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

*Rts.,* 644 F.3d at 1190–91. *Cf.* Doc. 73 at 70–71. This paragraph describes "how the several authorized purposes could be accomplished harmoniously." *Tri-State Water Rts.,* 644 F.3d at 1190. *Accord* ACF-18_00002704, at ACF-18_00002723–24 (Corps letter listing fish and wildlife conservation in same breath as water supply).

As with water supply, before the dam was built, the ACF Basin supported fish and wildlife. *See Tri-State Water Rts.,* 644 F.3d at 1192. Building a dam would harm fish and wildlife, and Congress responded by establishing a minimum flow requirement. *See id.* Congress also clearly indicated that the dam was intended to benefit fish and wildlife. *See id.* If fish and wildlife "were a subordinate purpose, the Buford Project would have been detrimental, rather than beneficial." *See id.*

Despite opposing similar arguments when their water supply interests were at stake, Appellants now argue that the Newman Report provisions are isolated and render fish and wildlife merely an incidental benefit. *See* Doc. 71 at 76–77;[19] Doc. 72 at 70–71; Doc. 73 at 68. But the issue is whether the Report required the project to operate "at the expense" of another project purpose because "[b]y definition, one

---

[19] The Corps did not argue below that Appellants' RHA claim was futile.

46

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

purpose that is to be accomplished to the detriment of another cannot be incidental." *Tri-State Water Rts.,* 644 F.3d at 1188–89.  That is as true for fish and wildlife as it was for water supply.

The WSPs suggest Paragraph 80 applies only in the vicinity of Atlanta.  Doc. 73 at 68, 71–72.  But Paragraph 80 does not limit its provision of water supply to fish in Atlanta.  By contrast, where the Report limits a project purpose to a specific area, it does so expressly.  *See* ACF-18_00002704, at ACF-18_00002751, ACF-18_00002756 (water supply for "Atlanta area;" flood control to "basin below").  "[D]ifferences in language like this convey differences in meaning." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 279 (2018).  "'[A]bsent provision[s] cannot be supplied by the courts.'" *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 677 (2020).  The Corps itself has identified the fish and wildlife conservation purpose as applying "system-wide."  ACF-18_00033734, at ACF-18_00033735.

The WSPs argue that fish and wildlife conservation[20] is not an authorized purpose because Paragraph 80 did not suggest increasing flows.  Doc. 73 at 69.  But

---

[20] *See Conservation*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/conservation (last visited June 10, 2024).

47

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

as with water supply, fish and wildlife requirements "could be met at the time as an incident to, or byproduct of, the generation of power." *Tri-State Water Rts.,* 644 F.3d at 1191; ACF-18_00002704, at ACF-18_00002751.

The WSPs' focus on Paragraph 96 regarding the potential *development* of fish and wildlife in reservoirs, Doc. 73 at 70, is misplaced. Paragraphs 80 and 100 focus on protecting resources that already exist, ACF-18_00002704, at ACF-18_00002751, ACF-18_00002756—i.e., fish and wildlife already in the ACF ecosystem—whereas Paragraph 96 focuses on developing new resources, ACF-18_00002704, at ACF-18_00002755.

Appellees discount legislative materials that refer to the RHA as authorizing fish and wildlife conservation. Doc. 72 at 72; Doc. 73 at 73–74. However, Georgia's cases are inapposite. *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 120 (2014), addresses an *agency's* "after-the-fact statement[s]" when enacting regulations that did not "even implement the statute that is its source." *United States v. Texas*, 507 U.S. 529, 535 n.4 (1993), involved parties' reliance on *different* statutes. Neither involve legislative history explicitly describing a statute's purpose.

Respectfully submitted this 23rd day of July 2024.

/s/ Tania Galloni
TANIA GALLONI

48

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

FL Bar No. 619221
CHRISTINA I. REICHERT
FL Bar No. 114257
Earthjustice
4500 Biscayne Blvd. Ste. 201
Miami, FL 33137
T: (305) 440-5433
F: (850) 681-0020
tgalloni@earthjustice.org
creichert@earthjustice.org

BONNIE MALLOY
FL Bar No. 86109
Earthjustice
111 S. MLK Jr. Blvd.
Tallahassee, FL 32301
T: (850) 681-0031
F: (850) 681-0020
bmalloy@earthjustice.org

49

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing Brief complies with the type-volume limitations and typeface requirements of Fed. R. App. P. 32(a). Specifically, this brief is printed in proportionally spaced, 14-point Times New Roman font using one-inch margins in compliance with Fed. R. App. P. 32(a)(4)–(6), and with the exception of footnotes and indented quotations, it is printed with double-spacing in compliance with Fed. R. App. P. 32(a)(4).  Excluding the items that are exempted under Fed. R. App. P. 32(f), this brief contains a total of 9,995 words to conform to the Court's July 2, 2024, order.  This certificate was prepared in reliance on the word processing system (Microsoft Word) used in this brief.

<u>/s/ Tania Galloni</u>
TANIA GALLONI

50

**Alabama, et al. v. U.S. Army Corps of Engineers et al., No. 21-13104**

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 25(c), I hereby certify that on the 23rd day of July 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record in this case. All registered CM/ECF users will be served by the Court's CM/ECF system.

<u>/s/ Tania Galloni</u>
TANIA GALLONI

51